IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

In re:                                         *

MANUS EDWARD SUDDRETH          *          Case No: 13-12978-DER
                                                                              (Chapter 11)

     Debtor                                  *

    *     *     *     *     *     *     *     *     *     *     *     *

DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT
PURSUANT TO § 1125 OF THE BANKRUPTCY CODE

James A. Vidmar, 00271
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044
(443) 569-5977
jvidmar@yvslaw.com

Dated:  September 28, 2016

## TERMS OF CONSTRUCTION

Capitalized terms used and not otherwise defined in this Disclosure Statement shall have the meaning set forth in the Debtor's Fourth Amended Plan of Reorganization (the "Plan") of Manus Edward Suddreth, as debtor and debtor in possession (the "Debtor"), a copy of which is **Exhibit 1** hereto and is incorporated herein by reference.  In the event a capitalized term is not defined therein, then it shall have the meaning given in the Bankruptcy Code or the Bankruptcy Rules.  In the event a capitalized term is not defined in the Plan, the Bankruptcy Code, or the Bankruptcy Rules, then it shall have the meaning such term has in ordinary usage, and if one or more meaning for such term exists in ordinary usage, then it shall have the meaning which is most consistent with the purposes of this Disclosure Statement, the Plan, and the Bankruptcy Code.  The terms of this Disclosure Statement shall not be construed against any person but shall be given a reasonable construction, consistent with the purposes hereof and of the Plan and the Bankruptcy Code.

## I.    INTRODUCTION

### A.    Introduction and Summary

Manus Edward Suddreth filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 21, 2013 (the "Petition Date").  Since the Petition Date, the Debtor has continued to manage his property and affairs as a debtor and debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

The Bankruptcy Code requires that the party proposing a Chapter 11 plan of reorganization prepare and file with the Bankruptcy Court a document called a "disclosure statement".

The Debtor prepared this Disclosure Statement in connection with solicitation of votes for acceptance of the Plan.  This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtor's Creditors to make an informed judgment about the Plan, including whether to accept or reject the Plan.

As described more fully herein, the Debtor asserts that the Plan is in the best interests of all Creditors and the estate and urges the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballots.

The Disclosure Statement provides the following categories of information:

| Section | Summary of Contents |
| --- | --- |
| I. | Introduction |
| II. | Background information and events leading to the Debtor's Chapter 11 Case |
| III. | A description of the Debtor's Chapter 11 Case |
| IV. | The Debtor's Assets and Liabilities |
| V. | Implementation of the Plan |
| VI. | Treatment of Claims and Interests under the Plan |
| VII. | Voting Procedures and Requirements |

VIII.          Other Plan Components

IX.           Risks and Considerations

X.            Plan Confirmation and Consummation

XI.           Alternatives to Confirmation and Consummation of the proposed Plan

XII.          Certain Federal Income and Tax Consequences of the Plan

XIII.         Debtor's Recommendation to Accept the Plan and Conclusion

To the extent that the information provided in this Disclosure Statement and the Plan (including any attached exhibits and Plan supplements) are in conflict, the terms of the Plan (including any attached exhibits and Plan supplements) will control.

Creditors should refer only to this Disclosure Statement and the Plan to determine whether to vote to accept or reject the Plan.

The Debtor asserts that approval of the Plan is indisputably in the best interests of the Debtor's Creditors.

Creditors may request additional copies of this Disclosure Statement from the Debtor's counsel at the following address:

James A. Vidmar, Esquire
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044

Pursuant to the Bankruptcy Code, only Creditors who actually vote on the Plan will be counted for purposes of determining whether the required number of acceptances have been obtained.  Failure to deliver a properly completed Ballot by the Voting Deadline will result in an abstention; consequently, the vote will neither be counted as an acceptance nor rejection of the Plan.

**B.**    **Disclaimer**

NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, OTHER EXHIBITS, SUPPLEMENTS TO THE PLAN AND THIS DISCLOSURE STATEMENT.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME HEREAFTER.  ALL CREDITORS AND INTEREST HOLDERS SHOULD READ CAREFULLY AND CONSIDER FULLY THE "RISK FACTORS" SECTION OF THIS DISCLOSURE STATEMENT BEFORE VOTING FOR OR AGAINST THE PLAN.  TO THE EXTENT OF ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS, OR ANY FUTURE ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, ESTOPPEL, OR WAIVER.

THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, EVENTS IN THE DEBTOR'S CHAPTER 11 CASE AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE PLAN AND RELATED SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR IN HIS VARIOUS FILINGS IN THIS CHAPTER 11 CASE AND FROM OTHER PARTIES' FILINGS, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. ANY VALUE GIVEN AS TO ASSETS OF THE DEBTOR IS BASED UPON AN ESTIMATION OF SUCH VALUE. ALTHOUGH THE DEBTOR HAS UNDERTAKEN REASONABLE AND DILIGENT EFFORTS TO PRESENT ACCURATE AND COMPLETE INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING THE FINANCIAL INFORMATION, IS COMPLETELY ACCURATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BEING PROVIDED BY THE DEBTOR AND NOT BY HIS COUNSEL, AND IS INCLUDED FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR. YOU ARE URGED TO CONSULT YOUR OWN COUNSEL AND FINANCIAL TAX ADVISORS ON ANY QUESTIONS OR CONCERNS RESPECTING TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS.

The Order approving this Disclosure Statement sets forth the deadlines, procedures and instructions for voting to accept or reject the Plan and for filing objections to confirmation of the Plan. For those who are entitled to vote, a Ballot is also enclosed. Voting instructions accompany each Ballot. Each Holder of a Claim entitled to vote on the Plan should read this Disclosure Statement and Plan, the Order approving this Disclosure Statement, and the instructions accompanying the Ballot in their entireties before voting on the Plan. CONSULTATION WITH COUNSEL IS ALSO RECOMMENDED.

## II.    BACKGROUND INFORMATION AND EVENTS LEADING TO BANKRUPTCY

### A.    Overview

Manus Edward Suddreth is the sole shareholder of W.P.I.P., Inc. ("WPIP"). The Debtor works full time for WPIP and draws a salary of $2,857.00 semi-monthly from the business. WPIP owns an industrial storage lot at 601 West Patapsco, Avenue, Baltimore, Maryland that derives its income from renting surface parking/storage space to commercial and industrial tenants. In addition to his ownership interest in WPIP, Suddreth also owns certain real estate, known as known as 7650, 7652 and 7654 Waterwood Trail, Glen Burnie, Maryland 21060, plus three adjacent parcels of land more particularly described as (1) 3.293 acres Pt Parcel A (Parcel 3492-9010-1370) Waterfront Waterwood, Glen Burnie, Maryland 21060;

(2) 0.583 acres Pt. Parcel B (Parcel 3842-9010-1375) Waterfront Waterwood, Glen Burnie, Maryland 21060; and (3) Pt Lot 5 (Parcel 3942-9010-1368) Waterfront Waterwood, Glen Burnie, Maryland 21060 (the "Waterwood Trail Properties"). Suddreth also owns 27919 Phoenix Church Road, Marion, Maryland 21838; Parcel 9, Phoenix Church Road, Marion Station, Maryland; 3059 Sackertown Road, Crisfield, Maryland 21817; 2910 Puget Street, Baltimore, Maryland 21230; 0.5 acres Liners Road (Parcel 05-072697), Church Creek, Maryland 21622; and 400 Potomac Avenue, Baltimore, Maryland 21237 (collectively with the Waterwood Trail Properties, the "Properties"). None of the Properties has any equity. The Debtor currently derives rental income from two of the Properties.

### B.      Events Leading to Bankruptcy

The Debtor incurred significant debt over time as a result of the funding of the acquisition and maintenance of the Properties and certain problems in the operation of the WPIP business. The economic downturn that began in 2008 resulted in a decline in WPIP's business, and income derived from the operation of WPIP became insufficient for the Debtor to service all of his debts. Rental income from the Properties also decreased with the economic downturn further negatively impacting his financial condition.

The Debtor was forced to file for Chapter 11 protection on February 21, 2013 on the eve of a scheduled foreclosure sale of part of the Properties, initiated by Baltimore County Savings Bank ("BCSB"), now First National Bank of Pennsylvania ("First National") as successor by merger.[1] WPIP's Chapter 11 case was filed on February 14, 2013 and was dismissed on September 8, 2015. Claims against WPIP have been largely resolved.

## III.      THE BANKRUPTCY CASE

### A.      The Bankruptcy Filings

On the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court. The Bankruptcy Court notified the parties that the meeting of creditors would take place on March 20, 2013, that the last day to file Proofs of Claim for all Creditors, except governmental units was June 18, 2013, and that the last day to file Proofs of Claim for governmental units is August 20, 2013.

### B.      Continuation of the Debtor's Affairs

After the Petition Date, the Debtor has continued to manage his affairs as a debtor in possession under the Bankruptcy Code. Pursuant to the Bankruptcy Code, the Debtor is required to comply with certain statutory reporting requirements, including the filing of monthly operating reports.

### C.      Professionals Retained

In connection with the commencement of the Chapter 11 Case, the Debtor sought and obtained Bankruptcy Court approval for the retention of Yumkas, Vidmar, Sweeney & Mulrenin, LLC[2] as his bankruptcy counsel. The Debtor also sought and obtained Bankruptcy Court approval for the retention of LiteHouse Realty, Inc. as real estate broker to market certain of his Properties.

---

[1]   In February 2014, BCSB merged with First National Bank of Pennsylvania and filed with the Court a Line Regarding Merger and Name Change for Creditor Baltimore County Savings Bank [WPIP Dkt. # 150] on March 7, 2014.
[2]   On October 1, 2015, Yumkas, Vidmar & Sweeney, LLC changed its name to Yumkas, Vidmar, Sweeney & Mulrenin, LLC.

**D.    The Debtor's Chapter 11 Plan**

The Debtor filed his Plan of Reorganization on October 29, 2015.

## IV.    THE DEBTOR'S ASSETS AND LIABILITIES

**A.    The Debtor's Schedules**

On March 15, 2013, the Debtor filed his Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements"). On June 13, 2014, the Debtor filed Amended Schedules B and C. The Schedules and Statements are part of the public record of the filings in this case and are incorporated herein by reference.

**B.    Assets**

1.    <u>Real Property</u>. The Debtor own real property, as described below:

| PROPERTY DESCRIPTION | Scheduled Value[3] |
|---|---|
| 7650 Waterwood Trail (a/k/a 905 Forest Grove Court), 3.293 acres Pt Parcel A (Parcel 3942-9010-1370), Waterfront Waterwood, Glen Burnie MD 21060 | $40,967.00[4] |
| 27919 Phoenix Church Road, 1 lot (Parcel 08-146136) and 0.745 acres (Parcel 08-140499), Marion, MD 21838 | 93,900.00 |
| 3059 Sackertown Road, Lot 0.50 acres (Parcel 12-004699), Crisfield, MD 21817 | 2,000.00 |
| 8210 Old Westover Marion Road, 43.11 acres-wood (Parcel 13-001626), Westover, MD 21871 | 78,100.00 |
| 7654 Waterwood Trail (a/k/a 901 Forest Grove Court), Pt Lot 5 (Parcel 3942-9010-1375), Waterfront Waterwood, Glen Burnie MD 21060 | 499,700.00 |
| 7652 Waterwood Trail (a/k/a 903 Forest Grove Court), Parcel B (Parcel 3942-9010-1377), Waterfront Waterwood, Glen Burnie MD 21060 | 480,900.00 |
| 0.583 acres part of Parcel B (Parcel 3942-9010-1371), Forest Grove Court, Waterfront Waterwood, Glen Burnie, MD 21060 | 46,300.00 |
| Pt Lot 5 (Parcel 3942-9010-1368), Forest Grove Court, Waterwood, Glen Burnie, MD 21060 | 7,000.00 |
| 2901 Puget Street, 0.167 acres (Parcel 28-04-7492B-001), Baltimore, MD 21230 | 7,200.00 |
| Lot 24,968 sq ft, Liners Road (Parcel 05-072697), Church Creek, Dorchester County, MD 21622 (inherited property from former owner after her death) | 2,000.00 |

---

[3]    At the time of the drafting of this Disclosure Statement, an appraisal of the subject properties had not been done by the Debtor. With the exception of the Sackertown Road, Liners Road and Potomac Avenue properties, the values scheduled for the Properties are the tax assessment values as of 7/1/13.

[4]    The Waterwood Properties are collectively estimated by the Debtor to have a value of $1,491,000. At the time of the drafting of this Disclosure Statement, a collective appraisal of the Waterwood Properties was not available; however, the Debtor believes this value to be generally accurate.

| PROPERTY DESCRIPTION | Scheduled Value[3] |
|---|---|
| 7650 Waterwood Trail (a/k/a 905 Forest Grove Court), Parcel A (Parcel 3942-9010-1376), Waterfront Waterwood, Glen Burnie MD 21060 | 663,300.00 |
| 400 Potomac Avenue (18.4 acres, 14 of which are usable), Baltimore, MD 21237 | 50,000.00 |

2.    Other Property.  In addition to the Debtor's real property, the Debtor own various personal property which includes vehicles, farming equipment, and household items, as detailed on Schedule B.

3.    Funding.  The Debtor generates income from employment with WPIP, his social security and his rental properties.  In addition, funding for the Plan payments required to Deutsche Bank National Trust Company, David W. Heckendorf, unsecured creditors, and the Internal Revenue Service is being provided by EMG Properties, LLC, with whom the Debtor has a business association.

## C.    Liabilities

1.    Administrative Expenses.  The Debtor has incurred and continue to incur liabilities for Professional fees and expenses in connection with this Chapter 11 Case.  The Debtor estimates that, as of the Effective Date, he will have unpaid administrative liability of approximately $80,000 for accrued fees and expenses of Professionals in this Chapter 11 Case.

2.    Secured Claims.  The Debtor's Secured Creditors are First National Bank of Pennsylvania, BPI Patapsco, LLC, C&G Properties, LLC, Deutsche Bank National Trust Company, David W. Heckendorf, the Estate of Leonard Briscoe, The Bank of New York Mellon c/o Ocwen Loan Servicing, LLC, Rosalie Mary Burdyck, secured claims arising from unpaid real property taxes, and the Internal Revenue Service.  The Debtor has reviewed the Proofs of Claim filed to reconcile them with the Debtor's Schedules and his books and records with a view to eliminating duplicative or erroneous Claims and to insure only valid Claims are ultimately Allowed.  Based on this preliminary reconciliation, the Debtor's Secured Creditors hold Claims against the estate in the approximate amount of $4,370,000.

3.    Priority Tax Claims.  The Debtor has Priority Tax claims with the State Maryland totaling $3,442.00 and the Internal Revenue Service totaling $20,728.53.

4.    Unsecured Claims.  As of the Petition Date, the Debtor recorded a total of approximately $1,525,000 in Unsecured Claims.  The Debtor has performed a preliminary claims reconciliation of (i) the Claims listed in the Debtor's Schedules, (ii) the Proofs of Claims filed, (iii) Proofs of Claim misclassified, asserted against the wrong debtor, or duplicates filed, and (iv) Disputed Claims.  Based on this analysis, the total of Unsecured Claims is $1,529,386.47.  The preliminary reconciliation is attached as **Exhibit 2** and incorporated herein by reference.

## V.    IMPLEMENTATION OF THE PLAN

### A.    Purpose of Reorganization

The purpose of the Plan is to provide a means for the Debtor to reorganize his financial affairs and restructure his obligations with his Creditors.

### B.    Overview

In order to fund the Plan, the Debtor has agreed to sell or refinance certain real property, free and clear of all liens, claims and encumbrances, with any such liens, claims and

encumbrances to attach to the proceeds of the sale pursuant to contracts of sale, after allowing for costs, including U.S. Trustee fees. The Debtor seek to close the proposed sales and refinance of the parcels as soon as possible, but in any event no later than November 1, 2016. The Debtor will also surrender the collateral securing the debts of First National, BPI Patapsco, LLC, The Bank of New York Mellon c/o Ocwen Loan Servicing, LLC, and Rosalie Mary Burdyck. In addition, the Debtor has agreed to make monthly payments to Deutsche Bank National Trust Company and David W. Heckendorf. Funding for these payments will come from the Debtor's income and if necessary from EMG Properties, LLC, a business associate of the Debtor.

All Claims against the Debtor shall be classified and treated pursuant to the terms of the Plan. As noted more fully below, the Plan contains eleven Classes of Claims. There are ten Classes of Secured Claims and one Class of Unsecured Claims.

### C. The Debtor's Affairs

Subject to the provisions of the Plan, the Reorganized Debtor shall be authorized to conduct his financial affairs and to use, sell, lease or otherwise dispose of the Parcels free of any restrictions contained in the Bankruptcy Code or Bankruptcy Rules.

## VI. TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

### A. Treatment of Classified Claims under the Plan

#### 1. Administrative Expense Creditors

Administrative Expense Creditors are unimpaired under the Plan and conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code. Therefore, the Holders of Allowed Administrative Expense Claims are not entitled to vote to accept or reject the Plan.

Except as otherwise provided below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) an amount, in Cash, by the Debtor equal to the Allowed amount of its Administrative Expense Claim, in accordance with § 1129(a)(9)(A) of the Bankruptcy Code, on the later of (i) the Effective Date, or as soon thereafter as reasonably practicable, or (ii) as soon as practicable after the date of a Final Order allowing such Administrative Expense Claim, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid by the Debtor (a) in the ordinary course of business in accordance with contract terms, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

#### 2. Priority Tax Creditors

Priority Tax Creditors are unimpaired under the Plan and conclusively deemed to have accepted the Plan pursuant to § 1126(f) of the Bankruptcy Code. Therefore, the Holders of Allowed Priority Tax Claims are not entitled to vote to accept or reject the Plan.

Each Holder of an Allowed Priority Tax Claim shall receive from the Debtor, on account of such Allowed Priority Tax Claim, regular installment payments in Cash in accordance with § 1129(a)(9)(C) of the Bankruptcy Code commencing on the later of (a) the Effective Date or as soon thereafter as reasonably practicable, or (b) as soon as reasonably practicable after the

date of a Final Order allowing such Priority Tax Claim.  Notwithstanding the above, each Holder of an Allowed Priority Tax Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor.  The Debtor shall have the right to prepay such Allowed Priority Tax Claims at any time, in whole or in part, without penalty or premium.

       3.      <u>Class 1:  First National Bank of Pennsylvania</u>

Class 1 consists of the Allowed Secured Claim of First National.  The Debtor is a borrower of two loans from First National, one of which is secured by real property owned by the Debtor (the "Debtor's Property").  First National will be paid by WPIP, a company wholly owned by the Debtor, and the Debtor will not be responsible for paying this claim.  At the lender's option, the Debtor's Property shall either be (a) surrendered to the lender or (b) foreclosed upon by the lender.  This Class shall retain its lien on its collateral.  If the Debtor is called upon to pay this claim by virtue of the guarantee, the Allowed Class 1 Claim will be treated as an unsecured claim and will be paid as provided for in Class 11.

Class 1 is Impaired by the Plan; therefore, the Holder of the Allowed Class 1 Secured Claim is entitled to vote to accept or reject the Plan.

       4.      <u>Class 2:  BPI Patapsco, LLC</u>

Class 2 consists of the Allowed Secured Claim of BPI Patapsco, LLC ("BPI").  In full and complete satisfaction, discharge and release of the Class 2 Secured Claim, the collateral securing the claim shall be surrendered in satisfaction of the debt.  The Holder of the Allowed Class 2 Secured Claim shall retain its prepetition lien on the BPI Collateral.

Class 2 is Impaired by the Plan; therefore, the Holder of the Allowed Class 2 Secured Claim is entitled to vote to accept or reject the Plan.

       5.      <u>Class 3:  C&G Properties, LLC</u>

Class 3 consists of the Allowed Secured Claim of C&G Properties, LLC ("C&G").  The Allowed Secured portion of the Class 3 Claim will be paid as if the Claim were to be amortized over thirty years, with a balloon payment due at the end of fifteen years.

Class 3 is Impaired by the Plan; therefore, the Holder of the Allowed Class 3 Secured Claim is entitled to vote to accept or reject the Plan.

       6.      <u>Class 4:  Deutsche Bank National Trust Company</u>

Class 4 consists of the Allowed Secured Claim of Deutsche Bank National Trust Company ("Deutsche Bank").  Pursuant to the Court's Adequate Protection Order Modifying Automatic Stay [Dkt. # 184] entered November 25, 2015, the stay has been lifted on the Deutsche Bank Collateral.  Any deficiency claim will be treated as an unsecured claim and will be paid as provided for in Class 11.

Class 4 is Impaired by the Plan; therefore, the Holder of the Allowed Class 4 Secured Claim is entitled to vote to accept or reject the Plan.

       7.      <u>Class 5:  David W. Heckendorf</u>

Class 5 consists of the Allowed Secured Claim of David W. Heckendorf ("Heckendorf").  The Class 5 Claimant has elected treatment under § 1111(b) of the Code.  In satisfaction of the Class 5 Claim, the Debtor will make monthly payments to Heckendorf in the amount $1,300.00 for twenty-five years (300 months).  Alternatively, the Debtor may pre-pay

the claim without penalty.  The principal amount of the payoff as of the Effective Date shall be $160,000.00.  Accordingly, the annualized interest calculation shall be eight point six zero eight percent (8.608%).  Payments shall commence on the 1st day of the month after the Effective Date.  Upon satisfaction of Heckendorf's Allowed Secured Claim in accordance with the terms of the Plan, Heckendorf shall release all liens and security interests he holds and shall execute all appropriate documentation provided to him by the Debtor to effect such lien releases.

Class 5 is Impaired by the Plan; therefore, the Holder of the Allowed Class 5 Secured Claim is entitled to vote to accept or reject the Plan.

8.    Class 6:  Leonard Briscoe

Class 6 consists of the Allowed Secured Claim of Leonard Briscoe ("Briscoe"). In full and complete satisfaction, discharge and release of the Class 6 Secured Claim, unless otherwise agreed by the Debtor and the estate of Leonard Briscoe, the claim of Briscoe shall be treated as a General Unsecured Claim under Class 11.

Class 6 is Impaired by the Plan; therefore, the Holder of the Allowed Class 6 Secured Claim is entitled to vote to accept or reject the Plan.

9.    Class 7:  The Bank of New York Mellon c/o Ocwen Loan Servicing, LLC

Class 7 consists of the Allowed Secured Claim of The Bank of New York Mellon c/o Ocwen Loan Servicing, LLC ("Ocwen").  The Ocwen Collateral shall be surrendered on or before the Effective Date, unless otherwise agreed by the parties.  To the extent that Ocwen's claim is not satisfied in full upon the sale the Ocwen Collateral, the remainder of the claim will be treated as an unsecured claim and will be paid as provided for in Class 11.

Class 7 is Impaired by the Plan; therefore, the Holder of the Allowed Class 7 Secured Claim is entitled to vote to accept or reject the Plan.

10.    Class 8:  Rosalie Mary Burdyck

Class 8 consists of the Allowed Secured Claim of Rosalie Mary Burdyck ("Burdyck").  Unless otherwise agreed by Debtor and Burdyck, upon approval of the Plan, the Debtor shall surrender Burdyck's collateral in satisfaction of the debt.  The Holder of the Allowed Class 8 Secured Claim shall retain her prepetition lien on the real property located at 400 Potomac Avenue (18.4 acres, 14 of which are usable).

Class 8 is Impaired by the Plan; therefore, the Holder of the Allowed Class 8 Secured Claim is entitled to vote to accept or reject the Plan.

11.    Class 9:  Allowed Secured Claims Arising from Unpaid Real Property Taxes

Class 9 consists of the Allowed Secured Claims Arising from Unpaid Real Property Taxes.  In full and complete satisfaction, discharge and release of the Class 9 Claims, the Debtor shall pay the Holders of the Allowed Class 9 Claims an amount equal to one hundred percent of the face amount of their claim.  Payment shall be due and payable upon the earlier to occur of a refinancing or sale of property upon which the claim is secured and in no event later than November 1, 2016.

Class 9 is Impaired by the Plan; therefore, the Holder of the Allowed Class 9 Secured Claim is entitled to vote to accept or reject the Plan.

12.     Class 10:  Internal Revenue Service

Class 10 consists of the Allowed Claim of the Internal Revenue Service (the "IRS").  To satisfy the priority Claim of $20,728.53, the Debtor shall pay the IRS equal monthly payments over 60 months.  Nothing in this Plan limits the rights of the IRS to assess and collect taxes or other liabilities against non-debtors.  Nothing in this Plan limits the rights of the IRS to assess and collect tax or other liabilities after the confirmation date against the Debtor to the extent that the IRS has such rights under non-bankruptcy law.  The confirmation of this Plan does not discharge the Debtor from the income tax liabilities (and statutory interest) for the 1993 and 1994 tax years pursuant to the exemption to discharge provided for by 11 U.S.C. § 523(a)(1)(C).

Class 10 is Impaired by the Plan; therefore, the Holder of the Allowed Class 10 Secured Claim is entitled to vote to accept or reject the Plan.

13.     Class 11:  Allowed Unsecured Claims

Class 11 consists of all Allowed Unsecured Claims.  In full and complete satisfaction, discharge and release of the Class 11 Claims, the Debtor shall pay the holders of Allowed Class 11 Claims the face amount of their Allowed Claims by making *pro rata* Cash distributions as follows:  The Holders of Allowed Class 11 Claims shall receive a payment of $10,000 twelve months after the Effective Date and the net proceeds of the liquidation of the Debtor's non-exempt personalty having a scheduled value of approximately $111,000.  This payment shall be shared *pro rata* among the Class.  The Holders of Class 11 Claims shall not receive interest on account of their Allowed Unsecured Claims.

Class 11 is Impaired by the Plan; therefore, Holders of Allowed Class 11 Unsecured Claims are entitled to vote to accept or reject the Plan.

## VII.    VOTING PROCEDURES AND REQUIREMENTS

Please refer to information provided with the Ballot in the solicitation package sent to you by the Debtor's counsel for further detailed voting instructions.  Only Impaired Classes of Claims are entitled to vote.  If the Claim or Claims you hold are not in one of those Classes, you are not entitled to vote, and thus you will not receive a Ballot from the Debtor's counsel.  Holders of Claims that are entitled to vote should read the Ballot provided by the Debtor's counsel and follow the accompanying instructions carefully.

---

**ANY QUESTIONS CONCERNING THE BALLOT OR ANY OTHER CONTENTS OF THE SOLICITATION PACKAGE SHOULD BE DIRECTED TO THE DEBTOR'S COUNSEL AT (410) 571-2780 OR BY EMAIL AT JVIDMAR@YVSLAW.COM.**

---

### A.    Vote Required for Acceptance by a Class

As a Holder of an Allowed Claim in a voting Class, your acceptance of the Plan is very important.  At least one voting Class must vote to accept the Plan.  If any voting Class votes to accept the Plan, the Debtor will attempt to invoke the "cramdown" provisions of the Bankruptcy Code with respect to Holders of any Claims in a Class that votes to reject the Plan.

A Class of Claims entitled to vote to accept or reject the Plan shall be deemed to accept the Plan if the Holders of Claims in such voting Class that hold at least two-thirds in amount and more than one-half in number of the Claims that vote in such Class vote to accept the Plan.

### B.      Classes Entitled to Vote

Pursuant to § 1126 of the Bankruptcy Code, each Impaired Class of Claims that will receive a Distribution pursuant to the Plan may vote separately to accept or reject the Plan. Each Holder of an Allowed Claim in such an Impaired Class as of the Voting Record Date shall receive a Ballot and may cast a vote to accept or reject the Plan.

### C.      Classes Not Entitled to Vote

The following Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (i) has been disallowed, (ii) is the subject of a pending objection, or (iii) was listed on the Debtor's Schedules as unliquidated, contingent or disputed and a Proof of Claim was not filed or was filed for an unliquidated, contingent or Disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise. However, if a Claim is disallowed in part, the Holder shall be entitled to vote the Allowed portion of the Claim.

### D.      Voting Procedures

The Debtor's counsel will facilitate the solicitation and voting process.  If you have any questions regarding voting procedures and your eligibility to vote to accept or reject the Plan, or if you need additional copies of documents included in the solicitation package, please contact the Debtor's counsel at the below mailing address, phone number, and email address:

James A. Vidmar, Esquire
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044
(410) 571-2780
jvidmar@yvslaw.com

BALLOTS CAST BY HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST BE **ACTUALLY RECEIVED BY THE DEBTOR'S COUNSEL AT THE ABOVE ADDRESS BY THE VOTING DEADLINE.  THE DEBTOR RESERVES THE RIGHT TO DECIDE WHETHER OR NOT TO COUNT BALLOTS RECEIVED BY THE DEBTOR'S COUNSEL AFTER THE VOTING DEADLINE.**

If a Ballot is damaged or lost, you may contact the Debtor's counsel to request another Ballot.  Any Ballot received by the Debtor's counsel which does not indicate an acceptance or rejection of the Plan will not be counted.

## VIII.   OTHER PLAN COMPONENTS

### A.      Determination of Claims

The Debtor reserve the right to seek the estimation of any contingent Claim, including Claims arising from any guarantees executed by the Debtor.

### B.      Distribution Procedures

Only Allowed Claims may receive Distributions under and in accordance with the Plan.

If any Claim is the subject of an objection filed with the Court, or is based on a judgment which remains subject to appeal or to which an appeal is pending, any payments to be made to the Holder on account of such Claim shall be withheld and reserved until such time as

the objection is resolved by settlement or a final and unappealable order of the Court is entered. Instead, the amount which would have been distributed on the disputed Claim if it were an Allowed Claim in the face amount of the Claim (the "Reserved Distribution") shall be withheld by the Debtor and deposited into a separate interest-bearing account until the disputed Claim has been resolved by a Final Order of the Bankruptcy Court. After the Final Order has resolved the disputed Claim, the Holder of such disputed Claim shall be paid all or part of the Reserved Distribution based on the percentage by which the allowed amount bears to the face value of the disputed Claim, plus the interest accrued on such sums in the reserve account. With respect to distributions to the Holders of disputed Claims subsequent to the Final Order resolving the disputed Claim, the Holder of the disputed Claim shall participate therein based on the allowed amount of the disputed Claim in the manner provided in this Plan.

The Debtor shall stop payment on any distribution check that is not cleared through the account upon which such check is drawn within ninety (90) days of the date of distribution. Distribution checks shall be mailed to the addresses given in proofs of claim filed herein, or, as to those Claimants who did not file a proof of claim, to the addresses listed in the Debtor's Schedules, unless the Debtor receive other instructions in writing from such Claimant(s). All funds which are not distributed as a result of stopped checks shall become property of the Debtor who distributed it for use in subsequent distributions. It shall be the obligation of each Claimant to provide written notice to the Debtor of any change of the Claimant's address.

If any party in interest holding any Allowed Claim fails to receive a payment as provided under the Plan, or if any party in interest questions the Debtor's compliance with the Plan in any way, such party shall give the appropriate Debtor written notice thereof, and that Debtor may cure such non-compliance within sixty (60) days of such notice.

## C.    Setoffs

The Debtor reserve all rights to offset a mutual debt owed to any of the Debtor by any creditor against such creditor's Allowed Claim or against any distribution required to be made by the Debtor to such creditor with respect to its Allowed Claim.

## D.    Executory Contracts and Unexpired Leases

Pursuant to § 365 of the Bankruptcy Code, a debtor in possession may assume or reject an Executory Contract or unexpired lease. A debtor in possession may reject any executory contract or unexpired lease that it has determined, within its exercise of its sound business judgment, would be burdensome to the estate to continue performing under the terms of such executory contract or unexpired lease. It is likewise within a debtor in possession's discretion to assume any executory contract or unexpired lease. If a debtor in possession assumes an executory contract or unexpired lease, the debtor in possession must cure any existing defaults thereunder or provide adequate assurance that it will promptly cure any defaults.

Unless expressly assumed, the Debtor reject, and the Confirmation Order shall constitute an order approving rejection of, all Executory Contracts that the Debtor has not assumed by the Confirmation Date or that are not the subject of a pending motion to assume filed prior to the Confirmation Date.

Any Claim for damages against the Debtor arising from the rejection by the Debtor of any Executory Contract pursuant to this Article or during the pendency of the Debtor's Chapter 11 Case shall be forever barred and shall not be enforceable against the Debtor or his property or interests in property, and no Holder of any such Claim shall participate in any distributions under the Plan with respect to such Claim, unless a proper proof of claim is served

on the Debtor and filed with the Court within thirty (30) days after the Confirmation Date, unless the Court has ordered otherwise.

### E.    Conditions of Effectiveness of Plan

Under the Plan, in order for the Effective Date to occur, the conditions of the Reorganized Debtor as set forth in the Plan and described below must be satisfied or waived:

The conditions precedent to the Effective Date of the Plan as to the Reorganized Debtor is as follows:

1.    The Bankruptcy Court shall have entered the Confirmation Order;

2.    Any other order necessary to satisfy any conditions to effectiveness of the Plan shall be a Final Order; and

3.    All other documents provided for under the Plan shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited by such documents.

If any of the conditions to consummation and the occurrence of the Effective Date as to the Reorganized Debtor has not been satisfied or duly waived by the Reorganized Debtor (i) on or before the first Business Day that is more than thirty days after the Confirmation Date or (ii) by such later date as is proposed by the Reorganized Debtor after notice and a hearing approved by the Bankruptcy Court, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated for failure to satisfy the conditions precedent, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Administrative Expenses, Claims against the Debtor, (b) prejudice in any manner the rights of the Holder of any Administrative Expense, against the Debtor, or (c) prejudice in any manner the rights of the Debtor in his bankruptcy cases.

### F.    Effect of Confirmation

1.    Vesting of Assets.  On the Effective Date, all property of the Debtor's bankruptcy estate not otherwise specifically treated under this Plan shall become the Reorganized Debtor's property.  The real property to be sold under the Plan shall be marketed by the Debtor and may be sold at private sale or auction in the Debtor's discretion.

2.    Binding Effect.  Except as otherwise provided in § 1141 of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against the Debtor and his respective successors and assigns, whether or not the Holder of the Claim has timely filed a proof of its Claim, the Claim of such Holder is Impaired under this Plan and whether or not such Holder has accepted the Plan.

3.    Avoidance.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, upon entry of the Confirmation Order, the following are avoided under this Plan:  any liens arising out of or in connection with judgment liens, or any other liens against the Debtor, the Debtor's Property or property of the Debtor's estates, including liens in favor of any Claimants not contemplated by this Plan.  Lien Creditors holding such avoided Claims shall execute, and otherwise cooperate to affect, any releases reasonably required by the Debtor to obtain releases of such Claims.

4.    <u>Injunction against Interference with Plan</u>.  Upon entry of the Confirmation Order, all Holders of a Claim along with their respective present or former assignees, employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

5.    <u>Injunction against Certain Actions</u>.  As of the Confirmation Date, all Holders of a Claim are permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) to enforce the Claim against the Debtor, or any of his property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order relating to the Claim against the Debtor or any of his property or any direct or indirect successor in interest to the Debtor or any property of any such successor; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind relating to the Claim against the Debtor or any of his property or any direct or indirect successor in interest to the Debtor or any property of any such successor; and (d) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the fullest extent permitted by applicable law.

6.    <u>Rights of Action</u>.  On and after the Confirmation Date, the Debtor shall have the exclusive right and standing to enforce for the benefit of the Debtor and his Creditors, any and all present or future rights, claims or causes of action against any person and rights of the Debtor that arose before or after the Petition Date, including, but not limited to, rights, claims, causes of action, avoiding powers, suits and proceedings arising under §§ 510, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code.  On and after the Confirmation Date, all persons are permanently enjoined from commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively or otherwise) on account of or respecting any claim, debt, right or cause of action of the Debtor for which the Debtor retain sole and exclusive authority to pursue in accordance with this Section.

7.    <u>Discharge</u>.  Upon complying with and satisfying the terms provided in the Plan, and except as provided in the Plan or in a Final Order determining that a debt is not dischargeable, the Debtor is discharged from all Claims that arose before the Confirmation Date, and any debt of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such debt is filed or deemed filed under § 501 of the Bankruptcy Code, (b) such Claim is Allowed under § 502 of the Bankruptcy Code, or (c) the Holder has accepted the Plan.  The order confirming the Plan shall provide that the commencement or continuation of any action, employment of process or act to collect, offset, enforce or recover the Claims discharged are enjoined.  Pursuant to § 524(e) of the Bankruptcy Code, the discharge of the Debtor does not affect the liability of any third party on a debt of the Debtor.

G.    **Administrative Provisions**

1.    <u>Retention of Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things the following purposes until such time as the Debtor's obligations under the Plan are fully discharged:

(a)    To hear and determine any motions for the assumption or rejection of Executory Contracts, and the allowance of any Claims resulting therefrom;

(b)     To determine any and all pending adversary proceedings, applications and contested matters;

(c)     To hear and determine any objection to any Claims;

(d)     To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

(e)     To adjudicate all Claims to any lien on any of the Debtor's assets or any proceeds thereof;

(f)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated, and/or if the Effective Date never occurs;

(g)     To issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(h)     To consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     To hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

(j)     To enforce and interpret the Plan and to hear and determine any dispute or any other matter arising out of or related to this Plan;

(k)     To recover all assets of the Debtor and property of the estates, wherever located;

(l)     To hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(m)     To enforce and interpret the discharge of Claims and Interests effected by this Plan and to enter and implement such orders as may be appropriate with regard thereto;

(n)     To hear any other matter consistent with the provisions of the Bankruptcy Code;

(o)     To enter a final decree closing the Chapter 11 Case; and

(p)     To hear and determine such other issues as the Court deems necessary and reasonable to carry out the intent and purposes of this Plan.

2.     <u>Professional Fees and Expenses</u>.  After the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professionals employed by the Debtor in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.

3.      <u>Waiver of Certain Fees</u>.  All Holders of Claims waive all penalties, default interest and/or late fees that may have accrued on their Claims other than as provided for in this Plan.

4.      <u>U.S. Trustee Fees</u>.  The Debtor is current, and the Reorganized Debtor shall remain current, in paying all fees owed to the United States Trustee until the Chapter 11 Case is closed.

5.      <u>Payment of Statutory Fees</u>.  All fees payable pursuant to Chapter 123 of Title 28, United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid by the Reorganized Debtor.

6.      <u>Modification of the Plan</u>.  The Debtor reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  A Holder of an Allowed Claim that is deemed to have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder.

7.      <u>Withdrawal or Revocation of the Plan</u>.  The Debtor may withdraw or revoke this Plan at any time prior to the Confirmation Date.  If the Debtor withdraw or revoke this Plan prior to the Confirmation Date Deadline or if the Confirmation Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

8.      <u>Cram Down</u>.  The Debtor may utilize the provisions of § 1129(b) of the Bankruptcy Code to satisfy the requirements for confirmation of this Plan over the rejection, if any, of any Class entitled to vote to accept or reject this Plan.

9.      <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the United States of America and, when applicable, the State of Maryland, without giving effect to the principles of conflicts of law thereof.

## IX.    RISKS AND CONSIDERATIONS

### A.    Risk Factors

Prior to deciding whether and how to vote on the Plan, each Holder of a Claim should consider carefully all of the information in this Disclosure Statement and should particularly consider the risk factors inherent in Debtor's reorganization.  These risk factors relate primarily to the Debtor's ability to sell and/or refinance the Parcels.

### B.    Bankruptcy Considerations

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the

re-solicitation of votes. Although the Debtor believes that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to such timing.

In the event the conditions precedent described in Section VII of the Plan have not been satisfied, or waived (to the extent possible) by the Debtor or applicable party (as provided for in the Plan) as of the Effective Date, then the Confirmation Order will be vacated, no Distributions will be made pursuant to the Plan, and the Debtor and all Holders of Claims will be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

The Bankruptcy Court may confirm the Plan if at least one Impaired Class votes to accept the Plan. As to each Impaired Class that has not accepted the Plan, the Plan may be confirmed if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the Classes. The Debtor believes that the Plan satisfies these requirements.

## X.      PLAN CONFIRMATION AND CONSUMMATION

### A.      Confirmation Hearing

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after appropriate notice, to hold a hearing on confirmation of a Plan. On, or as promptly as practicable after, the filing of the Plan and this Disclosure Statement, the Debtor will request, pursuant to the requirements of the Bankruptcy Code and the Bankruptcy Rules, that the Bankruptcy Court schedule the Confirmation Hearing. Notice of the Confirmation Hearing will be provided to all known Creditors or their representatives. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

Pursuant to Bankruptcy Code § 1128(b), any Party in Interest may object to confirmation of a plan of reorganization. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules, must set forth the name of the objector, the nature and amount of Claims held or asserted by the objector against the Debtor, the basis for the objection and the specific grounds of the objection, and must be filed with the Bankruptcy Court, with a copy to Chambers, together with proof of service thereof, and served upon (i) the U.S. Trustee's Office; (ii) counsel for the Debtor, James A. Vidmar, Esquire, Yumkas, Vidmar, Sweeney & Mulrenin, LLC, 10211 Wincopin Circle, Suite 500, Columbia, Maryland 21044; and (iii) such other parties as the Bankruptcy Court may order.

Bankruptcy Rule 9014 governs objections to confirmation of the Plan. **UNLESS AN OBJECTION TO CONFIRMATION OF THE PLAN IS TIMELY SERVED UPON THE PARTIES LISTED ABOVE AND FILED WITH THE BANKRUPTCY COURT, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT IN DETERMINING CONFIRMATION OF THE PLAN.**

### B.      Plan Confirmation Requirements under the Bankruptcy Code

At the Confirmation Hearing, the Bankruptcy Court will consider the terms of the Plan and determine whether the Plan terms satisfy the requirements set out in § 1129 of the Bankruptcy Code.

### C.      Plan Consummation

Upon confirmation of the Plan by the Bankruptcy Court, the Plan will be deemed consummated on the Effective Date. Distributions to Holders of Claims receiving a Distribution

pursuant to the terms of the Plan, as detailed in **Exhibit 3**, will follow consummation of the Plan. Post-confirmation estate expenses will be paid by the Reorganized Debtor.

### D.    Best Interests Test

The Bankruptcy Code requires that, with respect to an Impaired Class of Claims, each Holder of an Impaired Claim in such Class either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the amount (value) such Holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

The Debtor's costs of a Chapter 7 liquidation would necessarily include fees payable to a trustee in bankruptcy, as well as fees likely to be payable to attorneys, advisors, and other professionals that such a Chapter 7 trustee may engage to carry out its duties under the Bankruptcy Code. Other costs of liquidating the estates would include the expenses incurred during the bankruptcy case and allowed by the Bankruptcy Court in the Chapter 7 case, such as reimbursable compensation for the Debtor's Professionals, including, but not limited to, attorneys, financial advisors, appraisers, and accountants. In addition, claims would arise by reason of the Debtor's breach or rejection of contractual obligations and unexpired leases and Executory Contracts assumed or entered into by the Debtor during the pendency of the bankruptcy case.

The foregoing types of claims, costs, expenses, and fees that may arise in a Chapter 7 liquidation case would be paid in full from the proceeds of the sale of the Debtor's assets before the balance of those sales proceeds would be made available to pay pre-Chapter 11 priority and unsecured claims. The Debtor believes that, in a Chapter 7 liquidation, prepetition Unsecured Claims would receive no Distribution of property from the estates.

### E.    Liquidation Analysis

In order to make an informed decision whether to accept or reject the Plan, Creditors may compare the return on their Claims that will be received under the Plan to the return that would be received if this case were converted to a case under Chapter 7 of the Bankruptcy Code and liquidation occurred. As noted above, the Debtor believes that, under the proposed terms of the Plan, all Allowed Holders of Impaired Claims will receive property with a value not less than the value such Holders would receive in a Chapter 7 liquidation of the Debtor's assets. Virtually all of the Debtor's assets are real estate, and there is no equity in the real estate. As a result, the only property that a Chapter 7 trustee would liquidate is the Debtor's non-exempt personalty, which is set forth on **Exhibit 4** attached. There is approximately $111,000 in non-exempt personalty which will be liquidated as part of the Plan. An additional $10,000 will also be paid to Class 11 claimants.

The Debtor's belief is based primarily on (i) consideration of the effects that a Chapter 7 liquidation would have on the ultimate proceeds available for Distribution to Holders of Impaired Claims, including (a) the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a Chapter 7 trustee and professional advisors to the trustee, (b) the erosion in value of assets in a Chapter 7 case in the context of the rapid liquidation required under Chapter 7 and the "forced sale" atmosphere that would prevail, (c) the substantial increases in claims, and (d) the substantial delay in Distributions to the Holders of Impaired Claims that would likely ensue in a Chapter 7 liquidation; and (ii) the liquidation analysis.

The Debtor believes that any liquidation analysis is speculative; as such an analysis necessarily is premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtor. Thus, there can be no assurance as to values that would actually be realized in a

Chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Debtor's conclusions or concur with such assumptions in making its determinations under § 1129(a)(7) of the Bankruptcy Code.

If the Debtor were to liquidate under Chapter 7, a trustee would be appointed to liquidate the Debtor's assets and distribute proceeds of liquidation in accordance with priorities established in the Bankruptcy Code to his respective Creditors. From the net proceeds of liquidation, Distribution would be made first to Holders of Allowed Secured Claims in each case. If any funds remain after Distribution on account of Allowed Secured Claims, Distributions would then be made for the payment of Allowed Administrative Claims (including the Chapter 7 trustee's commission, the Chapter 7 trustee's counsel fees, the expenses of maintaining and liquidating the assets of the Debtor, the unpaid expenses of the Chapter 11 Case), and then to Holders of other Allowed Tax Priority Claims under § 507 of the Bankruptcy Code. Unsecured Creditors would be entitled to receive Distributions on Allowed Claims, but only after payment of Allowed Secured, Administrative and other Priority Tax Claims.

Further, if the Debtor's real property were placed in the hands of a trustee to liquidate, or if the Debtor's secured lenders were to attempt to market and sell the Debtor's real property, the sale prices would be dramatically lower than if the Debtor himself were allowed to negotiate the sales. As has already been the case when foreclosure sales of the Debtor's real property were conducted by various secured lenders, the sale prices for those parcels were less than half that which may have been realized had the Debtor sold the property himself. Given the Debtor's familiarity with the properties, and his strong track record for sales, the Debtor is eminently better suited to broker sales of his real property holdings. These sales would bring significant proceeds to the estate, which would then fund the proposed payments under the Plan.

### F.    Feasibility

Pursuant to § 1129(a)(11) of the Bankruptcy Code, a debtor must demonstrate that a bankruptcy court's confirmation of a plan, is not likely to be followed by the liquidation or need for further financial reorganization of the Debtor or his successors under the plan, unless such liquidation or reorganization is proposed under the plan. The Debtor asserts that upon the sale and/or refinance of the Parcels, the Reorganized Debtor can perform and meet his obligations under the Plan.

### G.    Section 1129(b)

Section 1129(b) of the Bankruptcy Code provides that the Bankruptcy Court may confirm a plan even if a Class of impaired Claims votes to reject the plan if the plan does not unfairly discriminate and is fair and equitable with respect to each impaired Class of Claims that has not accepted the plan.

1.    <u>No Unfair Discrimination</u>. The "no unfair discrimination" test requires that the plan not provide for unfair treatment with respect to classes of Claims that are of equal priority, but are receiving different treatment under the plan.

2.    <u>Fair and Equitable</u>. The fair and equitable requirement applies to classes of claims of different priority and status, such as secured versus unsecured. The plan satisfies the fair and equitable requirement if no Class of claims receives more than 100% of the allowed amount of the claims in such class. Further, if a Class of claims is considered a dissenting Class ("Dissenting Class"), *i.e.*, a Class of claims that is deemed to reject the plan because the required majorities in amount and number of votes is not received from the class, the following requirements apply:

a.    <u>Class of Secured Claims</u>: Each Holder of an impaired secured claim either (i) retains its liens on the subject property, to the extent of the allowed amount of its

secured claim and receives deferred cash payments having a value, as of the effective date of the plan, of at least the allowed amount of such claim, (ii) has the right to credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof) or (iii) receives the "indubitable equivalent" of its allowed secured claim.

       b.    <u>Class of Unsecured Creditors</u>:  Either (i) each Holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the Holders of claims and interests that are junior to the claims of the Dissenting Class will not receive any property under the plan.

       The Debtor believes the Plan will satisfy the "fair and equitable" requirement because all creditors will be paid in full.

## XI.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

       The Debtor believes the Plan is in the best interests of his Creditors and should accordingly be accepted and confirmed.  If the Plan as proposed, however, is not confirmed, the following three alternatives may be available to the Debtor:  (a) a liquidation of the Debtor's assets pursuant to Chapter 7 of the Bankruptcy Code, (b) a plan of reorganization may be proposed and confirmed, or (c) the Debtor's assets may be sold pursuant to Bankruptcy Code § 363.

### A.    Chapter 7 Liquidation

       If a plan pursuant to Chapter 11 of the Bankruptcy Code is not confirmed by the Bankruptcy Court, the Chapter 11 Case may be converted to a liquidation case under Chapter 7 of the Bankruptcy Code in which a trustee would be elected or appointed, pursuant to applicable provisions of Chapter 7 of the Bankruptcy Code, to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code.  A discussion of the effect that a Chapter 7 liquidation would have on the recoveries of Holders of Claims is set forth in Section X hereof.  The Debtor believes that such a liquidation would result in smaller Distributions being made to the Debtor's Creditors than those provided for in the Plan because (i) the likelihood that the Debtor's primary assets, the Property, would have to be sold or otherwise disposed of in a less orderly fashion, (ii) additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and (iii) additional expenses and Claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of leases and other executory contracts.  In a Chapter 7 liquidation, the Debtor believes that there would be no Distribution to Holders of Allowed Unsecured Claims.

### B.    Alternative Plan Pursuant to Chapter 11 of the Bankruptcy Code

       If the Plan is not confirmed, the Debtor, or any Party in Interest (if, pursuant to § 1121 of the Bankruptcy Code, the Debtor has not filed a plan within the time period prescribed under the Bankruptcy Code) may propose a different plan.  Such a plan might involve either an alternative reorganization structure or an orderly liquidation of the Debtor's assets in a Chapter 11 bankruptcy proceeding.  The Debtor believes that the terms of the Plan result in the realization of the most value for Holders of Claims against the Debtor's estates because all creditors will be paid one-hundred percent.  If the Debtor were to liquidate his assets in the Chapter 11 Case, the Debtor would still incur the expenses attendant with such liquidation. Such a liquidation process would be carried out over a lengthier time period.  Further, the appointment of a trustee is not required or usual in a Chapter 11 case.  Accordingly, expenses related to professional fees would most likely be less than professional fee expenses in a Chapter 7 liquidation case.

C.      **Section 363 Sale**

If the Plan as proposed is not confirmed, a sale ("363 Sale") of the Debtor's assets pursuant to Bankruptcy Code § 363 may be pursued by the Debtor.  In such an instance, certain prepetition secured lenders may have a right to credit bid as consideration in whole or part for the assets to be acquired.  After such a 363 Sale is consummated, a plan of reorganization pursuant to Chapter 11 of the Bankruptcy Code may be filed with the Bankruptcy Court with respect to any remaining property of the estates.

## XII.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Each Holder of a Claim should consult its own tax advisor to determine what effect, if any, the treatment afforded its respective Claim or Interest by the Plan may have under federal, state and local tax laws and the laws of any applicable foreign jurisdictions.

No statement in this Disclosure Statement should be construed as legal or tax advice.  Neither the Plan proponent nor his Professionals assume any responsibility or liability for the tax consequences the Holder of a Claim may incur as a result of the treatment afforded its Claim or Interest under the Plan.

The principal income tax consequence for a Creditor relates to its ability to deduct a portion of its Claim in the event the Creditor does not receive full payment of its Allowed Claim.  Section 166 of the Internal Revenue Code of 1986, as amended ("IRC") (relating to the deductibility of bad debts) generally provides that:

(a)      a totally worthless business bad debt is deductible only in the tax year in which it becomes worthless;

(b)      a partially worthless business bad debt is deductible in an amount not in excess of the part charged off on the taxpayer's within the taxable year; and

(c)      in the case of a taxpayer other than a corporation, a nonbusiness bad debt which becomes completely worthless during that taxable year is deductible as a short-term capital loss and is subject to the limitations imposed on the deductibility of such losses.

For purposes of IRC § 166, a "nonbusiness debt" means a debt other than (a) one created or acquired in connection with the taxpayer-creditor's trade or business or (b) the loss from the worthlessness of which was incurred during the operation of the taxpayer-creditor's trade or business.

Pursuant to Treas. Reg. § 1.166-2(c), a bankruptcy filing is generally an indication of the worthlessness of at least a part of an unsecured and unperfected debt.  In bankruptcy cases, a debt may become worthless before settlement in some instances, and in others only when a settlement has been reached.  In either case, the mere fact that bankruptcy proceedings are terminated in a later year, thereby confirming the conclusion that the debt is worthless, does not authorize the shifting of the deduction under IRC § 166 to such later year.  Pursuant to Treas. Reg. § 1.166-1(2)(ii), only the difference between the amount received in distribution of assets of a debtor, and the amount of the claim may be deducted under IRC § 166 as a bad debt.

Generally, a taxpayer is entitled to a bad debt deduction with respect to accounts receivable only if the taxpayer has recognized as income the accounts receivable in the year in which the bad debt deduction is claimed or a prior taxable year. Thus, bad debt deductions for worthless or partially worthless accounts receivable are normally available only to accrual

method taxpayers.  Likewise, worthless debts arising from unpaid wages, salaries, fees, rents and similar items of taxable income are not allowed as a bad debt deduction unless such items have been reported as income in the year for which the deduction as a bad debt is claimed or for a prior taxable year.

Business bad debts deductible under IRC § 166 generally may be deducted using either the specific charge-off method or, if certain requirements are met, the nonaccrual-experience method.  Under the specific charge-off method, specific business bad debts that become either partially or totally worthless during the tax year may be deducted in the manner permitted by IRC § 166.

If a deduction is taken for a bad debt which is recovered in whole or part in a latter tax year, the taxpayer may have to include in gross income the amount recovered, except, under limited circumstances, the amount of the deduction that did not reduce taxes in the year deducted.

## XIII.   RECOMMENDATION AND CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and the estates and urge the Holders of Impaired Claims entitled to vote to accept the Plan and to evidence such acceptance by properly voting and timely returning their Ballots.

      /s/ James A. Vidmar
James A. Vidmar, 00271
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland  21044
(443) 569-5977
jvidmar@yvslaw.com

Counsel for Debtor

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of September 2016, notice of filing the Debtor's Third Amended Disclosure Statement Pursuant to § 1125 of the Bankruptcy Code was sent electronically to those parties listed on the docket as being entitled to such electronic notices.


                                                        <u>/s/ James A. Vidmar</u>
                                                    James A. Vidmar

The following parties received
electronic notice of the filing:

Hugh M. Bernstein, Esquire
(hugh.m.bernstein@usdoj.gov)
Office of the U.S. Trustee
101 West Lombard Street
Baltimore, Maryland 21201

Shaan S. Chima, Esquire
(shaan.chima@gebsmith.com)
Counsel for Baltimore County Savings
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202-3281

Stephen Andrew Josey, Esquire
(stephen.a.josey@usdoj.gov)
Department of Justice, Tax Division
Post Office Box 227
Ben Franklin Station
Washington, D.C. 20044

Scott Elliot Nadel, Esquire
(scottnadel@lojnlaw.com)
Counsel for Bank of New York Mellon
Law Office of Jeffrey Nadel
4041 Powder Mill Road, Suite 415
Calverton, Maryland 20705

James A. Vidmar, Esquire
(jvidmar@yvslaw.com)
Counsel for Debtor
Yumkas, Vidmar, Sweeney & Mulrenin
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044

Kavitha Bondada, Esquire
(kavitha.bondada@usdoj.gov)
Department of Justice, Tax Division
Post Office Box 227
Ben Franklin Station
Washington, D.C. 20044

Alex Gordon, Esquire
(alex.gordon@usdoj.gov)
U.S. Attorney's Office
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770

Craig B. Leavers, Esquire
(craigl@hbllaw.com)
Counsel for CFS-4 II, LLC
Hofmeister, Breza & Leavers
Executive Plaza III
11350 McCormick Road, Suite 1300
Hunt Valley, Maryland 21031

Joseph Michael Selba, Esquire
(jselba@tydingslaw.com)
Counsel for David & Nancy Heckendorf
Tydings & Rosenberg LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202

Michael T. Cantrell, Esquire
(bankruptcymd@mwc-law.com)
Counsel for JPMorgan Chase Bank NA
McCabe, Weisberg & Conway, P.C.
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

James T. Heidelbach, Esquire
(jheid@gebsmith.com)
Counsel for Baltimore County Savings
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland 21202-3281

Kyle J. Moulding, Esquire
(bankruptcymd@mwc-law.com)
Counsel for Deutsche Bank National
Trust Company
312 Marshall Avenue, Suite 800
Laurel, Maryland 20707

Lisa Yonka Stevens, Esquire
(lstevens@yvslaw.com)
Counsel for Debtor
Yumkas, Vidmar, Sweeney & Mulrenin
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044