IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
<u>(Baltimore Division)</u>

| | | |
|---|---|---|
| **IN RE:** | * | |
| **MANUS EDWARD SUDDRETH,** | * | **Case No.: 13-12978-DER** |
| Debtor. | * | **Chapter 11** |

### REPORT BY CHAPTER 11 TRUSTEE

Joseph J. Bellinger, Chapter 11 Trustee (the "Trustee"), pursuant to 11 U.S.C. §1106(a)(4)(A) and the Court's Order Directing Appointment of Chapter 11 Trustee entered in this case on December 15, 2016 (Dckt. No. 281), submits this first report of the investigation of the Debtor's assets, liabilities, and business activities.

### <u>The Trustee's Preliminary Findings</u>

1. The Trustee's preliminary assessment is that this case should remain in Chapter 11 because the Trustee is operating a surface lot leasing business on real property that is owned by entities 100% owned by the Debtor (defined below as the "Facility"). The Trustee's preliminary assessment is that a plan of reorganization funded by the rents generated by the Facility or a plan of liquidation funded by the proceeds of a sale of the Facility is in the best interests of the estate and its creditors. Gaining control over and an understanding of the operations at the Facility have been the Trustee's primary focus in the first 60 days after appointment.

2. The Trustee has thus far spent less time on an analysis of the many properties owned by the Debtor listed in Schedule A, but it appears that an abandonment of several of the properties may be in the best interests of the estate and its creditors on the grounds that the properties are burdensome or of inconsequential value to the estate.

3. In October 2016, at the Debtor's request, Allen Davis, a friend of the Debtor, reviewed various proposals made to the Debtor by Mark Einstein for funding and implementing a plan. Mr. Davis undertook an investigation of the activities of the property management group owned by Mark Einstein and managed day-to-day by his representative Glen Jensen. On or about November 7, 2016, after reviewing records in the office at the Facility and information requested from Mr. Einstein, Mr. Davis ousted Mr. Einstein's management group from the Facility. Mr. Davis has raised allegations of negligent or gross mismanagement of the Facility, including diversion of rents, and the wrongful post-petition acquisition of two parcels that comprise approximately 40% of the Facility by two entities 100% owned by Mr. Einstein. The Trustee is investigating the allegations, but the Trustee is not reporting to the Court that there are claims and causes of action that exist and that prosecution of such claims is warranted. To date, the investigation has been limited to business and bank records that were in the office at the Facility, bank records of the Debtor and his entities, and public records.

4. This Report contains no information regarding allegations of diversion of rents, because the Trustee does not yet have records from Mr. Einstein or his entities that would allow the Trustee to determine whether rents or other income generated from the Facility were deposited into other accounts, or to determine whether rents or other income were used for improper purposes.

5. This Report provides a description of the transactions that resulted in the transfer of ownership of two parcels of the Facility post-petition from entities 100% owned by the Debtor to entities 100% owned by Mr. Einstein. In addition, this Report provides disclosure of the ways in which Mr. Einstein appears to have controlled these proceedings and the many interests he and his entities held in estate property; as property manager of the Facility, as a secured and unsecured

creditor of the Debtor and his entities, as the source of payment of Debtor's bankruptcy counsel's fees (which are disclosed in this case), and as the 100% owner of entities that acquired two of the six lots that were part of the Facility as of the Petition Date.

## Procedural Background

6. On February 21, 2013 (the "Petition Date"), Manus E. Suddreth (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code and continued to operate his business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7. The Debtor's Schedule B(13)[1] discloses that the Debtor owns four business entities that are each valued for $1.00 as follows:

- 100% ownership of Patapsco Excavating, Inc. (forfeited)
- 100% ownership of Patapsco Excavating/Silverlake, Inc. (forfeited)(owns real property titled in company name, liens on property exceed property value)
- 100% ownership of Pollution Properties, Inc. (owns real property titled in company name, liens on property exceed property value)
- 100% ownership of W.P.I.P., Inc. (entity is in bankruptcy)

8. The Monthly Operating Reports filed in this case disclose the Debtor's modest income, Social Security income, and rental income from other properties, and his household expenses. There is no financial reporting in this case on business entities that the Debtor owns and operates as required by Bankruptcy Rule 2015.3(a) and/or that should be included in financial reports as entities with forfeited charters that the Debtor continues to operate.

9. On September 28, 2016, the Debtor's Fourth Amended Plan (Dckt. No. 258)(the "Plan") and Third Amended Disclosure Statement (Dckt. No. 259) (the "Disclosure Statement") were filed. The Court approved the Disclosure Statement by an Order entered on September 29,

---

[1] This is the same in the Schedules filed on March 15, 2013, Dckt. No. 17 and the Amended Schedules filed on June 13, 2014, Dckt. No. 126.

3

2016, and a hearing on confirmation of the Plan was scheduled for November 9, 2016. Dckt. No. 261. David and Nancy Heckendorf filed an Objection to the Plan (Dckt. No. 267) and the confirmation hearing was continued to December 15, 2016. Dckt. No. 270.

10. On November 10, 2016, the United States Trustee filed a Motion to Dismiss or Convert due to the Debtor's inability to confirm a plan. Dckt. No. 272. The Debtor filed an Opposition in which was argued that the Disclosure Statement was approved, but "[c]ertain funding complications came to light on November 9, 2016 which the Debtor continues to address. The Debtor expects these issues to be resolved forthwith." Dckt. No. 278 at ¶9.

11. B.P.I. Patapsco, LLC ("BPI") filed a Memorandum supporting the United States Trustee's Motion, in which BPI supported conversion to Chapter 7. Dckt. No. 279. In that Memorandum, BPI states,

> "Previously, EMG Properties, LLC ("EMG"), an affiliate of BPI, proposed to provide certain financing to the Debtor in connection with the Plan. However, the Debtor and EMG were never able to reach agreement for any such financing, and EMG no longer is willing to provide any funding for the Plan." Dckt. No. 279, at ¶ 3.

12. At the hearing on the US Trustee's Motion, the US Trustee advised the Court that an individual raised allegations of gross mismanagement of certain of the Debtor's properties by the Debtor's property manager. The US Trustee had not independently investigated the allegations, but advised the Court that, given the allegations, the appropriate course was for the appointment of a Chapter 11 trustee to undertake an investigation and submit a Report to the Court.

13. After consideration of the Motion and responses and arguments made at the hearing, the Court entered an Order Directing Appointment of Chapter 11 Trustee and directing the Chapter 11 trustee to file the report described in 11 U.S.C. §1106(a)(4)(A). Dckt. No. 281.

Thereafter, the Court entered an Order granting the US Trustee's Application for the Appointment of Joseph J. Bellinger as Chapter 11 trustee.  Dckt. No. 285.

### W.P.I.P., Inc.'s Chapter 11 Case

14. On February 14, 2013, one week prior to the Petition Date, the Debtor's wholly owned entity, W.P.I.P., Inc. ("W.P.I.P.") filed a voluntary petition under Chapter 11 of the Bankruptcy Code (Case No. 13-12517-DER) (the "W.P.I.P. Case").  W.P.I.P. had separate bankruptcy counsel.

15. Schedules were filed in the W.P.I.P. Case on March 15, 2013 at Dckt. No. 23. Schedule A discloses ownership of real property at 601 West Patapsco Avenue, Baltimore, Maryland, with a value of $4.3 million (value based on bank's appraisal) and secured debt of $1,530,670.  While not a detailed description of the actual parcels, Schedule A in the W.P.I.P. Case described the Facility.  Schedule D lists Baltimore County Savings Bank as the mortgage note holder with a lien on the Facility.

16. Schedule G of Executory Contracts refers to an attached list, which is a four page rent roll that has a total monthly rents in column C of $35,180 which is $422,160 a year on an annualized basis.  The Monthly Operating Reports disclose rental income of $30,000 to $35,000 that, combined with other service income, total income of $35,000 to approximately $40,000.  The last Monthly Operating Report filed was for April 2015.  W.P.I.P. Case, Dckt. No. 267.

17. On August 11, 2015, the United States Trustee filed a Motion to Dismiss or Convert.  W.P.I.P. Case, Dckt. No. 277 .  The Motion was unopposed, and granted by an Order entered in the W.P.I.P. Case on September 8, 2015.  W.P.I.P. Case, Dckt. No. 290.

**The Industrial Storage Facility at 601 Patapsco Avenue**

18.     Due to the complexity and urgency of the issues presented, the Trustee's investigation has thus far focused primarily on the industrial storage facility located at 601 West Patapsco Avenue where commercial tenants lease surface lots for parking and storing semi-trucks, semi-trailers, equipment, vehicles, and containers of property (the "Facility"). Some tenants lease surface lots not much bigger than a typical parking space and a few tenants lease approximately one-acre sections in the Facility. The Facility provides security, outside lighting, an office trailer where tenants can have their mail sent, and some tenants have use of water and electric services.

19.     The Debtor purchased the six (6) lots totaling approximately 53.55 acres that comprise the entire Facility as the Petition Date in a series of acquisitions from 1982 through 1997. The Baltimore City/County boundary runs east/west across the Facility, so that four lots are in Baltimore City and two lots are in Baltimore County. The only public road access to the Facility is by West Patapsco Avenue to the North of the Facility. The property to the South of the Facility is marsh land with no access to a public road.

20.     The following is a description of the of the six (6) Lots, the Debtor's interest in the Lots as of the Petition Date, and the status of the entities that hold or held title to the parcels:

**Lot 001 in Baltimore City and Lot 6824 in Baltimore County**: W.P.I.P. owned these two parcels as of the Petition Date. Lot 001 is a 13.81 acre parcel and Lot 6824 is an adjacent 19.25 acre parcel. The record owner of these two parcels is A.V. & E Industries, Inc., a Maryland corporation formed in 1975 that lost its charter in 2007 and revived its charter in 2013. A.V. & E. Industries, Inc. changed its name to W.P.I.P.I., Inc., then to W.P.I.P., Inc. Both parcels were purchased in 1982. These two Lots are still owned by W.P.I.P. and its charter is in good standing.

**Lots 004A, 006, and 007 Located in Baltimore City:** Patapsco Excavating, Inc. ("Patapsco Excavating") purchased these three parcels in 1987. Lots 004A and 006 are each less than an acre and are not occupied by tenants. These two Lots provide the only public road access to W. Patapsco Avenue for most of the other Lots, including Lot 007 and Lot 9684. Lot 007 is an approximately 13 acre parcel on the east side of the Facility, and it has no legally enforceable

6

easements or other enforceable access rights to W. Patapsco Avenue. Patapsco Property is still the record owner of Lots 004A and 006, but as described below, is no longer the owner of Lot 007. Patapsco Excavating was not in good standing as of the Petition Date. Patapsco Excavating was formed as a Delaware corporation and registered to do business in Maryland on April 21, 1986, and forfeited its charter on November 15, 2011 for failure to pay taxes and/or failure to file property tax reports as required by Md. Code Ann. Corps. & Assn's §3-503. The corporate charter has not been revived, and therefore its properties, including Lots 004A, Lot 006 and Lot 007 vested upon forfeiture in the Debtor as sole director for the benefit of creditors and himself as sole shareholder of Patapsco Excavating under §3-515.

**Lot 9684 in Baltimore County**:  Pollution Property, Inc.[2] purchased Lot 9684, a 7.12-acre parcel, in 1997 and was the record owner as of the Petition Date. Pollution Property is no longer the owner of Lot 9684 as described below. Pollution Property was not in good standing as of the Petition Date. Pollution Property was formed on March 12, 1997 and lost its charter on October 07, 1999 for failure to pay taxes and/or failure to file property tax reports as required by Md. Code Ann. Corps. & Assn's §3-503. The corporate charter has not been revived, and therefore its properties, including Lot 9684 vested upon forfeiture in the Debtor as sole director for the benefit of creditors and himself as sole shareholder of Pollution Property under §3-515.

### Mark Einstein's substantial involvement with and interests in the Facility

21. Mr. Einstein is a certified public accountant who was employed by CohnReznick and its predecessor entity from 1977 through 2016, and is now a principal with Absolute Tax Credit Investments. When this case and the W.P.I.P. Case were filed, the Debtor requested that Mark Einstein serve as property manager for the Facility. The request was due in part to the financial reporting requirements required in Chapter 11 cases, and in part because the Debtor suffers from coronary disease, and he has very limited physical mobility.

22. Mr. Einstein agreed to manage the Facility and started to do so at approximately the same time as the Chapter 11 cases were filed. The property manager for the Facility was Mr. Einstein's wholly owned entity, Albion M, LLC ("Albion").

23. There was no written property management agreement. The oral agreement between the Debtor and Albion was that Albion would perform the customary duties of property

---

[2] The Debtor's Schedules incorrectly refer to this entity as Pollution Prop*erties*, Inc. *See*, Amended Schedule B, Dckt. No. 126, at p. 3. Pollution Property, Inc. is the record owner of Lot 9694.

manager and receive ten percent (10%) of the gross rents generated at the Facility. Starting in approximately July 2013, Mr. Einstein's representative Glen Jensen managed daily operations at the Facility.

24. Mr. Einstein's interests in the Facility are not limited to serving as property manager by and through Albion. Mark Einstein is the 100% owner of B.P.I. Patapsco, LLC ("BPI"), JACE Note, LLC ("JACE"), and E.M.G. Properties, LLC ("EMG") which have significant interests in and involvement with the Facility.

25. B.P.I. asserts numerous secured and unsecured claims against the Debtor, W.P.I.P., Patpsco Excavating, and Pollution Property, which include:

- There are at least two Demand Notes dated February 7, 2013, only days before the Chapter 11 filings, in favor of BPI from the Debtor and/or his entities. There is a Demand Note dated February 7, 2013 from Patapsco Excavating, Inc., Pollution Properties, Inc., and the Debtor, as borrowers stating an original principal amount of $200,000 (the "BPI Note"). [3] A Deed of Trust from Patapsco Excavating, Inc., Pollution Property, Inc., and the Debtor, to secure the BPI Note was recorded on February 13, 2013 in the Land Records of Baltimore City and Baltimore County against some or all of the Lots at the Facility (the "BPI Deed of Trust").[4] A copy of the BPI Note is attached as **Exhibit A** and a copy of the BPI Deed of Trust is attached hereto as **Exhibit B**.

---

[3] The Debtor's Schedule D lists among the secured creditors:

> B.P.I. Patapsco, LLC
> Date claim incurred: 2/13/13
> Nature of lien: UCC 1 Financing Statement
> Blanket lien on personal property of the Debtor
> Located at 7650 Waterwood Trail
> (also secured by Patapsco Excavating, Inc. and Pollution Property, Inc.)
> Amount of claim: Unknown

[4] The Demand Note identifies Pollution Properties, Inc. as a borrower, and the Deed of Trust identifies Pollution Property, Inc. as a grantor. The signature line on the Deed of Trust is corrected by hand to change the name from Pollution Properties, Inc. to Pollution Property, Inc. The legal descriptions appended to the Deed of Trust appear to include the two Lots owned by W.P.I.P., but W.P.I.P. is not identified as a borrower under the Demand Note or grantor in the Deed of Trust.

- In addition, there is a Demand Note dated February 7, 2013 from WPIP to BPI stating an original principal amount of $15,000 (the "WPIP-BPI Note"). A copy of the WPIP-BPI Note is attached as **Exhibit C**.
- There is a Demand Note dated February 7, 2013 from WPIP to Mark Einstein stating an original principal amount of $5,000 (the "WPIP-Einstein Note").[5] A copy of the WPIP-Einstein Note is attached as **Exhibit D**.
- Titles to eight (8) motor vehicles owned by the Debtor reflect liens against title held by BPI. According to the Department of Motor Vehicles, the liens were placed on the vehicles on February 7, 2013.[6]
- The Debtor's Statement of Financial Affairs were filed on March 15, 2013. Dckt. No. 16. SOFA No. 4 lists among the lawsuits a case styled, *B.P.I. Patapsco, LLC v. Manus E. Suddreth*, in the Circuit Court for Anne Arundel County, Case No. 02C13175948, in which a judgment by confession was entered on March 4, 2013 (post-petition). According to the Maryland Judiciary Case Search database, the confessed judgment was for the principal amount of $26,780.71, plus "other fee" of $109,202.31, for a total judgment of $138,189.85.

26. Pursuant to a Loan Purchase Agreement dated April 26, 2016, JACE purchased from CFS-4, LLC a Promissory Note for $1.5 million dated July 18, 2008, executed and delivered by the Debtor to Baltimore County Savings Bank secured by a mortgage loan granted by W.P.I.P. on its lots at the Facility (the "BCSB Loan"). The purchase price for the BCSB Loan is $1,625,000, with payment of $125,000 by JACE at closing, and a promissory note from JACE for $1.5 million. Upon information and belief, the BCSB Loan is Proof of Claim No. 6 filed by Baltimore County Savings Bank. An Assignment of Claim to CFS-4 II was filed on February 10, 2015 at Dckt. No. 143. However, there is no Assignment of Claim filed reflecting the purchase of the BCSB Loan by JACE. A copy of the Loan Purchase Agreement is attached hereto as **Exhibit E**.

27. According to the Memorandum filed by BPI described in paragraph 11 above, EMG was going to be the source of funding of loans to the Debtor to fund the Plan, but they were unable to reach an agreement on the loans. Based upon the income and expenses that the Trustee has

---

[5] B.P.I. and Mark Einstein are listed in Schedule F in the W.P.I.P. Case as unsecured creditors with claims of $15,000 and $5,000, respectively, with no disclosure of the date the claims were incurred or the consideration.

[6] Not all of the motor vehicles are listed in the Debtor's Schedule B.

9

reviewed, it is not clear whether any loans would have been required or for how much, but possible loans to the Debtor to "fund the Plan" made by EMG, an entity 100% owned by Mark Einstein is yet another interest in the Facility and involvement in the proceedings with little or no disclosure that all of these entities are 100% owned by Mark Einstein.

### The Post-Petition Transfers of Ownership of Lots at the Facility

28. BPI acquired Lot 007 through a Tax Lien Certificate sale, and attempted to acquire Lot 004A through a Tax Lien Certificate sale. EMG acquired Lot 9684 from Pollution Property by Quitclaim Deed. The Trustee's investigation into these transfers or attempted transfers is ongoing, and this report is limited to a summary of the transactions based upon a review of the public records, as well as records obtained from and communications with the Baltimore City Director of Finance office.

A. **BPI acquired ownership of Lot 007 through a Tax Lien Certificate Sale.** The property taxes were not paid for 2011 through 2014 for a total unpaid property taxes of $44,143.29. The Director of Finance for Baltimore City sold a Tax Lien Certificate to Angela Gray, Esquire, for Lot 007 on May 18, 2015 for payment of the past due taxes (i.e., $44,143.29). Patapsco Excavating, as the property owner, pursuant to Md. Code Ann. Tax-Prop. §14-828(3), had the right to redeem Lot 007 by paying the tax certificate holder (i) the amount paid for the Tax Lien Certificate, including 18% per annum interest, (ii) all current taxes, plus any interest and penalties on those taxes, and (iii) any actual expenses or legal fees allowed by Md. Code Ann. Tax-Prop. §14-843. BPI filed an action for foreclosure on right of redemption in Baltimore City Circuit Court on April 20, 2104, *BPI Patapsco, LLC v. Patapsco Excavating, Inc.*, Case No. 24C14002563 and the Circuit Court entered an Order of Judgment Foreclosing Right of Redemption on March 13, 2015. Thereafter, the City conveyed Lot 007 to BPI by a Deed dated June 26, 2015 and recorded among the Land Records of Baltimore City on October 29, 2015 at Liber 17611, Page 373 for $181,443 (the "BPI Deed"). A copy of the BPI Deed is attached hereto as **Exhibit F**.

Upon information and belief, after paying the amounts due to the Tax Lien Certificate holder including additional taxes due which was $46,058.99 on the date of payment, the remainder of the consideration stated in the BPI Deed of $181,443 (approximately $135,384) should have been remitted to the property owner, Patapsco Excavating. The Trustee has not found a record of such payment to Patapsco Excavating. The Notices from the City of Baltimore located by the Trustee for unpaid taxes on Lot 007 were mailed to the Facility at 601 W. Patapsco Avenue which would have been received and opened by Albion, the property manager.

10

**B.     BPI attempted to acquire Lot 004A through a Tax Lien Certificate Sale**. The property taxes on Lot 004A are approximately $180 a year. The real property taxes on Lot 004A for 2013 and 2014 were not paid and B.P.I. purchased the Tax Lien Certificate on May 18, 2015 for $2,000. Allen Davis, a friend of the Debtor whose intervention into these proceedings is described below, located correspondence from Andrew W. Gray, Esquire, counsel to BPI dated September 27, 2016 advising Patapsco Excavating of the right to redeem Lot 004A as well as BPI's right to foreclose on the right to redeem, and Mr. Davis paid the amount due to redeem Lot 004A on December 23, 2016. A copy of the correspondence from Andrew W. Gray dated September 27, 2016 is attached hereto as **Exhibit G**.

**C.     EMG Acquired Lot 9684 by Quitclaim Deed.** A Quitclaim Deed dated December 31, 2015 and recorded in the Land Records of Baltimore County on April 13, 2016 at Book 37385, Page 326, recites that the Debtor, as "Trustee for Pollution Property, Inc., a forfeited Maryland corporation," conveyed Lot 9684 to EMG Properties, LLC, for "$0.00" consideration. A copy of the Pollution Property Deed is attached hereto as **Exhibit H**.

### Einstein's control of Chapter 11 Proceedings

29.     According to Debtor's counsel's third interim application, the Court entered three Orders granting applications for compensation:

(i) a first interim application for compensation filed on October 2, 2013 (Doc. No. 61) was granted by an Order entered on October 31, 2013 (Doc. No. 78) which authorized counsel to apply a retainer of $14,389 and for the Debtor to pay, as funds were available and consistent with any cash collateral orders entered in the case, the remaining $21,899.15. Upon information and belief, the unpaid fees allowed by the "First Fee Order" are $1,899.15[7];

(ii)     although counsel refers to a second interim application for compensation being filed on October 22, 2014 granted by an Order entered on November 21, 2014 authorizing compensation of $55,976 and $978.16 in expenses, no such second interim application or Order appears on the docket.[8] Upon information and belief, the unpaid fees that counsel states are allowed by the "Second Fee Order" total $35,853.31.[9]; and

(iii)     a third interim application filed on October 21, 2016 (Doc. No. 266) was granted by an Order entered on November 21, 2016 (Doc. No. 276), authorized interim compensation of $85,044.50 in compensation and $1,701.64 in expenses. Upon information and belief, all of the fees allowed by the "Third Fee Order" remain unpaid.

---

[7] See, First Sup Supplemental Disclosure of Compensation, Doc. No. 191, at ¶ 6.
[8] *See*, Third Interim Application, Doc. No. 266, at ¶ 6; Supplemental Disclosure of Compensation, at Doc. No. 191, at ¶ 4; and Supplemental Disclosures of Compensation, at Doc. Nos. 197 and 236, at ¶ 2 (the Supplemental Disclosures cite to Doc. No. 224 as the second interim fee order, but that is a cash collateral order.
[9] See, Third Supplemental Disclosure of Compensation, Doc. No. 236, at ¶ 3.

30. According to three (3) Supplemental Disclosures of Compensation filed by counsel, a portion of the allowed fees were not paid by the Debtor, but were paid by Mark Einstein or EMG, with the expectation that the payments toward allowed fees of counsel would be repaid to Mr. Einstein or EMG by the Debtor after confirmation of a plan. Specifically, the Supplemental Disclosures state that Mr. Einstein paid $10,000 of counsel's allowed fees on June 29, 2015. Supp. Discl., Dckt. No. 191, at ¶ 6. EMG paid $20,500 of counsel's allowed compensation in a series of payments of $2,500 on August 6, 2015; $8,000 on October 5, 2015; $5,000 on January 15, 2016; and $5,000 on May 6, 2016. Supp. Discls., Dckt. No. 191, at ¶¶ 7, 9; Dckt. No. 197 at ¶3; and Dckt. No. 236 at ¶ 3.

31. The invoices of Debtor's counsel attached to the third application for compensation indicate that Mark Einstein and Glen Jensen were the principal points of contact with Debtor's counsel. Specifically, Mark Einstein is identified in the invoices as the person with whom counsel communicated in over 70 time entries, and Glen Jensen is identified in over 50 entries as a person with whom counsel communicated. In contrast, there are 4 entries that describe a telephone call or meeting with Suddreth. One of those entries was a telephone call that included Mr. Einstein (12/03/2014) and one of those entries describes a conference call with the "Suddreth team" (06/20/2016) which may not have even included the Debtor.

32. There are several reasons why direct and frequent communications with Messrs. Einstein and Jensen by Debtor's counsel would ordinarily make sense. Mr. Einstein is the owner of Albion, the property manager. Mr. Jensen was Mr. Einstein's day-to-day manager of the Facility. While the Debtor has substantial institutional knowledge of his properties and liabilities, the kinds of information counsel might need day to day would be most efficiently provided by the property manager. If the only involvement Mr. Einstein had in this case was property manager

12

through Albion, then him and his team being the main point of contact for Debtor's counsel would not appear to be a concern. However, Mark Einstein holds substantial and varied economic interests in the estate and the Facility, virtually none of which appears to be disclosed, and therefore any exercise of control over the proceedings is cause for concern.

### The Ouster of Einstein's Team as Property Manager

33. In October 2016, the Debtor requested that his friend Allen Davis review the issues in the Chapter 11 proceedings, including proposals made by Mr. Einstein that pertained to confirmation of the Plan. Mr. Davis requested financial information from Mr. Einstein and received some of the requested information. On or about November 7, 2016, Mr. Davis had Mr. Einstein's property management team removed from the Facility.

34. Mr. Davis met with the US Trustee and provided information and documents obtained at the office at the Facility that Mr. Davis alleges support claims and causes of action against Mr. Einstein and others for mismanagement of the Facility, diversion and concealment of rents, and the post-petition transfers of two of the Lots. The US Trustee has not made any of its own findings regarding any of the allegations, but the meeting with Mr. Davis resulted in the US Trustee recommending the appointment of a Chapter 11 trustee to undertake an investigation.

35. Mr. Einstein and his entities filed a lawsuit in the Circuit Court for Baltimore County against the Debtor, Mr. Davis, and one other person who has worked at the Facility for the Debtor for over thirty years in which plaintiffs allege theft of rents, slander, and wrongful denial of access to the Facility. On November 22, 2016, JACE issued a notice of assignment of rents dated November 22, 2016 instructing all tenants to pay all future rents to JACE.

36. Since the Trustee has been appointed, the Trustee and Mr. Einstein have engaged in numerous discussions and negotiations, and on a preliminary basis, reached agreements and

understandings and are cooperating under those agreements and understandings. The agreements reached include the following items that have been or will be done:

- The Trustee has granted Messrs. Einstein and Jensen and other representatives access through the gate and onto Lots 007 and Lot 9684
- The Trustee has signed an assurance letter to the tenants of Lots 007 and 9684 that the Trustee will allow access to W. Patapsco Avenue by crossing over Lots 004A and 006
- JACE has entered into a joint letter with the Trustee revoking the assignment of rents and authorizing the Trustee to collect rents from WPIP tenants on Lots 001 and 6824
- The Trustee is negotiating a pro form budget with Mr. Einstein in his capacity as owner of JACE
- BPI, EMG, and JACE will forbear from seeking to exercise any rights and remedies and the lawsuit filed in Baltimore County will be stayed
- Upon signing certain agreements, Mark Einstein and all of his entities will provide documents and financial records that will permit the Trustee to complete an investigation into the allegations and to determine the feasibility of a plan of liquidation or plan of reorganization

37. The Trustee is undertaking a thorough investigation of the allegations of mismanagement of the Facility, including allegations of diversion of rents and allegations of the wrongful manner in which Mr. Einstein's entities acquired two of the lots post-petition. Negotiations with Mr. Einstein and his counsel are ongoing and frequent.

## The Trustee's Findings and Recommendations

38. Although the financial information available to the Trustee is limited, it appears that the Facility generates a positive cash flow, and that there is significant potential for increasing the rents generated by Lots 001 and 6824.

39. The Trustee believes that the case should remain in Chapter 11 proceedings so that operations at the Facility can be further assessed. The Facility appears to be a viable source of funding of a plan either by a sale or the rents generated at the Facility.

40. It is less clear whether any of the properties disclosed in the Debtor's Schedule A can or should be preserved for the estate. There appears to be no equity in any of the real property

listed on the Debtor's Schedule A, but each property requires further analysis before the Trustee files notices of intention to abandon any of the real property.

41. This analysis specifically includes the Debtor's residence commonly known as 7650 Waterwood Trail (a/k/a 905 Forest Grove Court), and the adjacent residential properties commonly known as 7654 Waterwood Trail (a/k/a 901 Forest Grove Court) and 7652 Waterwood Trail (a/k/a 903 Forest Grove Court) which may have the capacity to generate more rents than they are presently.

42. Unless the Court Orders or directs otherwise, the Trustee will supplement this Report in sixty (60) days.

Date:  February 27, 2017

/s/ Joseph J. Bellinger, Esquire
Joseph J. Bellinger, Esquire
Federal Bar No. 08394
Offit Kurman, P.A.
300 E. Lombard Street, Suite 2010
Baltimore, MD 21202
(410) 209-6415
jbellinger@offitkurman.com
*Chapter 11 Trustee*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 27th day of February 2017, a copy of the foregoing Report and exhibits thereto was served via first class mail, postage prepaid, to the following:

James A. Vidmar, Esquire
Yumkas, Vidmar, Sweeney & Mulrenin, LLC
10211 Wincopin Circle, Suite 500
Columbia, Maryland 21044
(*Formerly Counsel to the Debtor*)

Manus E. Suddreth
7650 Waterwood Trail
Glen Burnie, Maryland 21060

Irving E. Walker, Esquire
Cole Schotz, P.C.
300 E. Lombard Street, Suite 1450
Baltimore, Maryland 21202
(*Counsel to B.P.I. Patapsco, LLC*)

Joseph M. Selba, Esquire
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
*(Counsel to David and Nancy Heckendorf)*

Office of the United States Trustee
101 W. Lombard Street, Suite 2625
Baltimore, Maryland 21201
Attn: Hugh Bernstein, Esquire

                                             */s/ Joseph J. Bellinger, Esquire*
                                             Joseph J. Bellinger, Esquire