IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| IN RE: | \* |
| | \* |
| MANUS E. SUDDRETH, | \*   Case No.:  13-12978 - DER |
| | \*   (Chapter 11) |
| DEBTOR. | \* |
| | \* |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**MOTION BY CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER
APPROVING A STANDSTILL AGREEMENT AND AN
<u>AGREEMENT OF COOPERATION WITH THE EINSTEIN PARTIES</u>**

Joseph J. Bellinger, Chapter 11 Trustee for the bankruptcy estate of Manus E. Suddreth, pursuant to 11 U.S.C. §§ 105 and 363, and Fed. R. Bankr. P. 9019, by and through his undersigned attorneys, files this Motion for Entry of an Order Approving a Standstill Agreement and an Agreement of Cooperation between the Trustee, on the one hand, and Mark Einstein and four entities 100% owned by Mark Einstein that are parties in interest in this case, on the other hand. In support hereof, the Trustee states as follows:

**<u>Jurisdiction and Venue</u>**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 101 *et. seq*. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (E), (H),& (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 & 1409.

**<u>Parties & Background</u>**

2. On February 21, 2013 (the "Petition Date"), Manus E. Suddreth (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code and continued to operate his business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      On November 10, 2016, the United States Trustee filed a Motion to Dismiss or Convert due to the Debtor's inability to confirm a plan. Dckt. No. 272.  The Debtor filed an Opposition in which it was argued that the Disclosure Statement was approved, but "[c]ertain funding complications came to light on November 9, 2016…"   Dckt. No. 278 at ¶9.

4.      After consideration of the Motion and arguments of counsel at a hearing thereon, the Court entered an Order Directing Appointment of Chapter 11 Trustee.  Dckt. No. 281.  Thereafter, the Court entered an Order granting the United States Trustee's Application for the Appointment of Joseph J. Bellinger as Chapter 11 trustee. Dckt. No. 285.

5.      As of the Petition Date, the Debtor was the 100% owner of W.P.I.P., Inc. ("WPIP"), which owns two of the parcels that make up a surface parking and storage facility located at 601 West Patapsco Avenue where commercial tenants lease surface lots for parking and storing semi-trucks, semi-trailers, equipment, vehicles, and containers of property (the "Facility").  The Debtor's ownership interest and governance rights in WPIP are property of the estate that vested in the Trustee for the benefit of the estate and its creditors.  *In re: Modanlo*, 412 B.R. 715 (Bankr. D. Md. 2006) (holding that a Chapter 11 trustee of an individual debtor possessed both the economic interests and governance rights in a limited liability company that the debtor had as of the petition date).  The Trustee promptly determined that it was in the best interests of the estate to exercise control over WPIP.  The Debtor gave his written consent by a Resolution and Informal Actions of Shareholder dated January 30, 2017.

6.      There are at least four (4) entities owned solely by Mark Einstein that are parties in interest in this case and that are parties to the two (2) agreements that are the subject of this Motion (collectively, the "Einstein Parties"):

      A.    Albion MM, LLC ("Albion") is an Einstein-owned entity that served as property manager at the Facility from January 2014 until it was removed by the Debtor's representatives on or about November 7, 2016;

      B.    B.P.I. Patapsco, LLC ("BPI") is an Einstein-owned entity that acquired Lot 007 at the Facility at a tax lien sale by a Deed from the Baltimore City Director of Finance that was recorded on October 29, 2015. Lot 007 was owned by WPIP as of the Petition Date;

      C.    E.M.G. Properties, LLC ("EMG") is an Einstein-owned entity that acquired Lot 9684 from the Debtor's forfeited entity Pollution Property, Inc. ("PPI") by a Quitclaim Deed that was recorded on April 13, 2016. PPI was the record owner of Lot 9684 as of the Petition Date; and

      D.    JACE Note, LLC ("JACE") is an Einstein-owned entity that purchased a Promissory Note that is secured by a mortgage lien on the Facility pursuant to a Loan Purchase Agreement dated April 26, 2016.

7.    On or about November 7, 2016, as a result of disputes between the Debtor and the Einstein Parties, Albion and the Einstein Parties were removed as property manager of the Facility. Thereafter, the Einstein Parties commenced litigation on numerous fronts:

      A.  In November 2016, alleging events of default under the terms of the Promissory Note, JACE issued written notices of its assignment of rents to all of WPIP's tenants at the Facility directing the WPIP tenants to pay rents to JACE, effective immediately;

      B.   In November 2016, JACE initiated collection and enforcement of confessed judgments entered against WPIP by requesting writs of execution from the Circuit Courts for Baltimore City and Baltimore County against all assets of WPIP;

      C.    In January 2017, JACE initiated foreclosure proceedings in the Circuit Courts for Baltimore City and Baltimore County against the real property at the Facility owned by WPIP; and

      D.    In December 2016, EMG, JACE and Mark Einstein filed suit against WPIP, the Debtor, Allen Davis (a representative of the Debtor) and Billy Hardin (a long time laborer who worked at the Facility for the Debtor), in the Circuit Court for Baltimore County, in connection with the disputes between the Debtor and the Einstein Parties that arose after the Einstein Parties were removed as property manager for WPIP (the actions described in paragraph 7(A) – (D) are referred to collectively as the "Pending Litigation").

8. Tenants of the two (2) lots owned by BPI and EMG (i.e., Lots 7 and 9684) required access to W. Patapsco Avenue through the security gate controlled by WPIP, as their respective parcels are land locked with no enforceable right of way or easement to the public road. WPIP tenants were paying rent to JACE pursuant to the written notice they received from JACE invoking the assignment of rents, and WPIP had inadvertently collected rent payments from tenants of BPI and EMG, who were accustomed to paying their rent at the WPIP office trailer next to the security gate. In order to stabilize operations at the Facility and avoid the costs, risks, and delay that the Pending Litigation would inevitably cause, the Trustee and the Einstein Parties engaged in lengthy negotiations regarding, among other things, establishing protocols for providing BPI and EMG's tenants access through the security gate, allowing the Einstein Parties access to the two lots that are now owned by BPI and EMG, reconciling the rent payments, and securing JACE's release of its invocation of the assignment of rents.

9. The Trustee, on the one hand, and the Einstein Parties, on the other hand, negotiated and entered into an "Agreement of Cooperation" dated March 29, 2017. A copy of the Agreement of Cooperation is attached as Exhibit A. Pursuant to the Agreement of Cooperation, the Trustee and the Einstein Parties have agreed to, among other things:

- account for and reconcile rents collected associated with the real property of the other;
- allocate the net rents due to WPIP to the amount of indebtedness under the JACE Note;
- WPIP will make monthly debt service payments of $12,000 to JACE;
- WPIP will be entitled to credit on the JACE Note for WPIP's payment of shared overhead expenses; and
- the parties agreed not to trespass on the other's property or interfere with the tenants or operations of the other at the Facility.

10. In addition, the Trustee, on the one hand, and the Einstein Parties, on the other hand, have entered into a "Standstill Agreement" dated April 27, 2017. A copy of the Standstill Agreement is attached as Exhibit B. Pursuant to the Standstill Agreement, the Trustee and the

Einstein Parties have agreed to forbear from prosecuting the Pending Litigation under the terms and conditions set forth therein.

11. Starting with an initial meeting on Friday, January 20, 2017, the Trustee and the Einstein Parties engaged in lengthy and difficult negotiations regarding the terms of the Agreement of Cooperation and the Standstill Agreement (the "Agreements"), as well as a myriad of other issues, with numerous meetings and telephone conference calls. The negotiations were arms-length, and there were strong disagreements and heated discussions about the issues.

12. The Agreements do not constitute a resolution of any claims or causes of action the estate may have related to the Einstein Parties' management of the Facility, or the post-petition acquisition of two of the lots at the Facility by BPI and EMG. The Trustee has reserved all rights with respect to such matters. Similarly, the Einstein Parties have preserved all of their rights in defense of any such actions, as well as their right to pursue all or some of the Pending Litigation. The Agreements are a *détente*, providing a framework for the parties to manage their operations at the Facility that minimizes the risk of disputes boiling over into litigation that neither side desires. Simply put, the Agreements provide the parties with the benefits of forbearance and cooperation, but nothing more. At the same time, the Agreements provide benefits to the Estate and the Einstein Parties, reduce litigation and provide a means for further discussions to address the many issues involved in this case.

## **Legal Standard**

13. Bankruptcy Rule 9019 states in relevant part that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the U.S. trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

14.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *See United States ex. rel. Rahman v. Oncology Assoc., P.C.*, et al., 269 B.R. 139, 149 (Bankr. D. Md. 2001), *aff'd by*, 61 Fed. Appx. 860 (4th Cir. 2003); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Rule 9019 implements section 363 of the Bankruptcy Code, pursuant to which a debtor may use or sell property other than in the ordinary course of business after notice and hearing. *Id.* at 394 n.2.

15.     In approving a proposed settlement, the Bankruptcy Court must determine whether the settlement is in the best interests of the estate. While it is the obligation of a bankruptcy court to review independently a proposed compromise to determine whether it is fair, equitable, and in the best interests of the bankruptcy estate, settlements are to be encouraged. *Rahman, 269* B.R. at149. A bankruptcy court must examine whether the trustee's actions in settling fall within the universe of reasonable action, not whether pressing onward might produce more funds for the estate. *In re Bowman,* 181 B.R. 836, 846 (Bankr. D. Md. 1995) ("The court may approve the settlement over objections, unless the proposed settlement falls below the lowest point of reasonableness") *(citing In re W.T. Grant Co.,* 699 F.2d 599, 608, 613 (2d Cir.), *cert, denied,* 464 U.S. 822 (1983)); *In re Ashford Hotels, Ltd.,* 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) (viewing settlement within the "lowest point in the range of reasonableness").

16.     A bankruptcy court should approve a settlement if it is fair and equitable, and in the best interests of the estate. *In re Degenaars*, 261 B.R. 316, 319 (Bankr. M.D. Fla., Apr 12, 2001). In determining whether to approve a settlement pursuant to section 363 of the Bankruptcy Code and Rule 9019, the Third Circuit has stated that a bankruptcy court is required to "assess and

6

balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Martin*, 91 F.3d at 393 (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). In making this determination, a court should consider four criteria: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved and related expense and inconvenience, and (4) the paramount interest of the creditors of the estate. *Id.*; *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (citing *Anderson* factors as controlling whether settlement should be approved). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

17. When applying the above-noted criteria to the facts of a particular case, a bankruptcy court does not have to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement. *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 356 (5th. Cir 1997). Likewise, a bankruptcy court does not need to conduct an evidentiary hearing as a prerequisite to approving the settlement. *Depoister v. Mary M. Holloway Foundation*, 36 F.3d 582, 586 (7th Cir. 1994). Instead, it is the responsibility of the bankruptcy court to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Spielfogel*, 211 B.R. 133, 143-44 (Bankr. S.D.N.Y. 1997); *In re Carla Leathers, Inc.* 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985). *See In re Bowman*, 181 B.R. 836, 846 (Bankr. D. Md. 1995) ("The court may approve the settlement over objections, unless the proposed settlement falls below the lowest point of reasonableness") (citing In re W.T. Grant Co., 699 F.2d 599, 608, 613 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983)); *In re Ashford*

*Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998 (viewing settlement with the "lowest point in the range of reasonableness").

19. Approval of a compromise is within the "sound discretion" of the bankruptcy court. *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995). The bankruptcy court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hospital-Osteopathic Medical Center*, 221 B.R. 603, 610 (Bankr. N.D. Ohio 1996) (citing *In re Bell and Beckwith*, 87 B.R. 476, 478-479 (Bankr. N.D. Ohio 1988).

19. To the extent applicable, approval of a settlement that involves property of the estate should also constitute a reasonable exercise of the trustee's business judgment under Bankruptcy Code section 363(b), which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In interpreting section 363, courts have held that a transaction involving property of the estate generally should be approved so long as the trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business." *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983).

20. The Trustee respectfully submits that approval of the Agreements is in the best interest of the estate and readily satisfies the applicable factors espoused by the courts in the cases set forth above. The Agreements do not constitute a settlement of claims or causes of action of the estate or of the Pending Litigation. The Agreements provide the terms for a forbearance of the Pending Litigation, and for the parties to manage operations at the Facility cooperatively, while the Trustee undertakes the investigation of the management of the Facility, the use and disposition of rents, and the acquisition of the two lots by BPI and EMG post-petition.

21. Pursuant to Local Rule 9013-2, the Trustee has not filed a separate Memorandum of Law in support of this Motion, and relies solely upon this Motion.

**WHEREFORE,** for the reasons stated herein, Joseph J. Bellinger, Chapter 11 trustee, respectfully requests that this Court grant the following relief:

A. Grant this Motion and approve the Agreement of Cooperation attached hereto as Exhibit A and the Standstill Agreement attached hereto as Exhibit B; and

B. Grant such other and further relief as this Court deems fair and just.

Respectfully submitted,

Date: May 12, 2017

*/s/ Joseph J. Bellinger, Esquire*
Joseph J. Bellinger, Esquire
Offit Kurman, P.A. (Fed. Bar. No. 08394)
300 East Lombard Street, Ste. 2010
Baltimore, Maryland 21202
(410) 209 – 6415
jbellinger@offitkurman.com
*Attorneys for Chapter 11 Trustee*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 12th day of May, 2017, a copy of the foregoing Motion, together with the Notice and proposed Order, were served via first class mail, postage prepaid upon the following:

Manus E. Suddreth
7650 Waterwood Trail
Glen Burnie, Maryland 21060

Irving E. Walker, Esquire
Cole Schotz, P.C.
300 E. Lombard Street, Suite 1450
Baltimore, Maryland 21202
(*Counsel to Einstein Parties*)

Joseph M. Selba, Esquire
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202
(*Counsel to David and Nancy Heckendorf*)

Craig B. Leavers, Esquire
Hofmeister, Breza & Leavers
11350 McCormick Road
Executive Plaza III, Suite 1300
Hunt Valley, Maryland 21031
(*Counsel to CFS-4 II, LLC*)

Office of the United States Trustee
101 W. Lombard Street, Suite 2625
Baltimore, Maryland 21201
Attn: Hugh Bernstein, Esquire

Stephen A. Josey, Esquire
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C. 20044
(*Counsel to United States of America*)

                                                            /s/ Joseph J. Bellinger, Esquire
                                                             Joseph J. Bellinger, Esquire

4817-5110-8680, v. 1