## AGREEMENT OF COOPERATION

This Agreement of Cooperation ("Agreement") is entered into as of March 29, 2017, by and between Joseph J. Bellinger, the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Manus Edward Suddreth ("Debtor") and other non-Trustee entities wholly owned by the Debtor, which include W.P.I.P., Inc. ("WPIP") formerly known as A.V.& E. Industries, Inc. and/or A.V.E. Enterprises, Inc. ("A.V.E."), Patapsco Excavating, Inc. ("Patapsco Excavating"), and Pollution Property, Inc. ("Pollution Property") (the Debtor, WPIP, A.V.E. Patapsco Excavating, and Pollution Property, collectively, the "Suddreth Parties"), on the one hand, and Mark Einstein ("Einstein"), and entities wholly owned by Einstein, which include B.P.I. Patapsco, LLC ("BPI"), EMG Properties, LLC ("EMG"), Albion MM, LLC ("Albion") and JACE Note, LLC ("JACE"), (Einstein, BPI, EMG, Albion and JACE, collectively, the "Einstein Parties"), on the other hand (the Suddreth Parties and the Einstein Parties, collectively, the "Parties").

### RECITALS

WHEREAS, on February 21, 2013, Manus E. Suddreth ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on March 12, 2013 (the "Petition Date"), in the United States Bankruptcy Court for the District of Maryland (Baltimore Division) (the "Bankruptcy Court"), Case No. 13-12978-DER (the "Bankruptcy Case");

WHEREAS, upon a Motion to Dismiss or Convert to Chapter 7 and a hearing thereon, the Court entered an Order Directing Appointment of Chapter 11 Trustee, and on December 28, 2016, the Court entered an Order Approving the Appointment of Joseph J. Bellinger as Chapter 11 Trustee;

WHEREAS, the Trustee maintains that the economic interests (the "Ownership Interests") and the governance rights (the "Governance Rights") in and to the entities wholly-owned by the Debtor as of the Petition Date, including the entities within the definition of "Suddreth Parties" herein, constitute property of the estate, and the Trustee has determined, in the reasonable exercise of his business judgment, that it is in the best interest of the estate and its creditors for the Trustee to exercise control over the Governance Rights in and to the Debtor Entities;

WHEREAS, as of the Petition Date, the Suddreth Parties owned six (6) adjacent lots that have a common street address of 601 W. Patapsco Avenue in South Baltimore (the "Facility"). The Facility is used for industrial storage whereby commercial tenants lease space for storage of vehicles, containers, equipment, and other property. The only public roadway to which any of the six (6) lots have access is W. Patapsco Avenue, which runs east and west along the northern border of the Facility;

WHEREAS, Lot 1 is an approximately 13.81 acre parcel owned by WPIP in the name of AVE and Lot 6824 is an approximately 19.25 acre parcel owned by WPIP in the name of AVE;

WHEREAS, Lot 4A is an approximately .139 acre parcel and Lot 6 is an approximately .235 acre parcel owned by Patapsco Excavating, Inc. Lots 4A and 6 are part of one means of access to the adjacent public road, W. Patapsco Avenue, to all of the other lots at the Facility;

WHEREAS, Lot 007 is an approximately 13 acre parcel that was owned by Patapsco Excavating as of the Petition Date. The Einstein Parties have advised the Trustee that an entity named Comain XII Tax Lien Funds LLC, unrelated to the Suddreth Parties or the Einstein Parties ("Comain"), purchased a tax lien on Lot 007 at a Baltimore City Tax Sale for $44,143.29 on May 15, 2013, and that Comain sold the Tax Lien Certificate to BPI, and BPI purchased Lot 007 by a Deed dated June 26, 2015 from the Baltimore City Director of Finance that was recorded among the Land Records of Baltimore City on or about October 29, 2015;

WHEREAS, Lot 9684 is an approximately 7.12 acre parcel that was owned by Pollution Property as of the Petition Date. The Einstein Parties have advised the Trustee that on or about April 13, 2016, EMG acquired Lot 9684 from Pollution Property and the Debtor pursuant to a Quitclaim Deed dated December 31, 2015, signed by the Debtor that was recorded among the Land Records of Baltimore County on or about April 13, 2016.

WHEREAS, at the Debtor's request, Einstein, along with the Debtor, managed the Facility during the Chapter 11 up through approximately November 7, 2016, by and through his property management company, Albion, in exchange for a fee of ten percent (10%) of the rents collected from tenants at the Facility which was reported to the Bankruptcy Court on a monthly basis in a WPIP Chapter 11 Bankruptcy proceeding;

WHEREAS, pursuant to a Loan Purchase Agreement dated April 26, 2016, JACE purchased from CFS-4 II, LLC a Note in the original principal amount of $1,250,000 executed by the Suddreth Parties and related loan documents, which Note is secured by an Indemnity Deed of Trust on the Facility (the "JACE Loan");

WHEREAS, the Parties believe it is in their best interests to cooperate with each other with respect to the management of the their respective operation of business at the Facility;

WHEREAS, disputes arose between the Suddreth Parties and certain representatives of the Suddreth Parties, on the one hand, and the Einstein Parties, on the other hand, in November 2016, resulting in the Suddreth Parties terminating the management agreement with the Einstein Parties and denying them access to the Facility;

WHEREAS, the Suddreth Parties allege that the Einstein Parties did not manage the Facility adequately and the Einstein Parties deny all such allegations and maintain that the Facility materially improved while they were involved in management;

WHEREAS, on November 22, 2016, alleging events of default under the terms of the JACE Loan, JACE issued written notices of its assignment of rents to all of the tenants at the Facility directing all tenants to pay rents to it, and not to the Suddreth Parties, effective immediately;

**WHEREAS**, in November 2016, JACE initiated collection proceedings against WPIP in connection with the confessed judgment entered against Debtor and WPIP on July 22, 2010 by the Circuit Court for Anne Arundel County, Maryland, Case No. 02-C-10-154612. Specifically, JACE filed (1) a request for writ of execution in the Circuit Court for Baltimore City, Maryland, Case No. 24-C-10-006104, on November 16, 2016, and (2) a request for writ of execution in the Circuit Court for Baltimore County, Maryland, Case No. 03-C-10-010029, on November 18, 2016 (collectively, the "Enforcement Actions").

**WHEREAS**, on December 20, 2016, EMG, JACE and Einstein filed suit against WPIP, the Debtor, Allen Davis (an agent of the Debtor) ("Davis") and Billy Hardin (an agent of the Debtor) ("Hardin"), in the Circuit Court for Baltimore County, Maryland, Case No. 03-C-16-012947, in connection with the disputes between the Suddreth Parties, on the one hand, and the Einstein Parties, on the other hand, asserting numerous claims and causes of action (the "Lawsuit").

**WHEREAS**, JACE also initiated foreclosure proceedings in connection with the JACE Loan by filing (1) an Order to Docket in the Circuit Court for Baltimore City, Maryland, Case No. 24-O-17-000011, on January 3, 2017, and (2) an Order to Docket in the Circuit Court for Baltimore County, Maryland, Case No. 03-C-17-000088, on January 4, 2017 (collectively, the "Foreclosure Proceedings") (the Enforcement Actions, the Lawsuit, and the Foreclosure Proceedings, collectively, the "Pending Litigation");

**WHEREAS**, Trustee's duties include conducting an investigation into the transactions and occurrences during the Chapter 11 proceedings, and the Einstein Parties have agreed to cooperate in that investigation and to provide documents reasonably requested by the Trustee, while reserving all of their rights, defenses and remedies;

**WHEREAS**, the Parties desire to cooperate in managing the Facility and avoid the risks and costs of litigation including a stay of the Pending Litigation under this Agreement, subject to the terms and conditions of this Agreement;

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Recitals.** The Recitals set forth above are incorporated herein and are made a substantive part of this Agreement as though fully set forth below.

2. **Term.** The term ("Term") of this Agreement is six (6) months after execution unless extended by the prior written consent of the Parties for additional sixty (60) day periods.

3. **Early Termination.** This Agreement shall terminate upon the occurrence of any of the following: (i) expiration of the Term without renewal; (ii) a material breach of the Agreement that is not cured within ten (10) days of issuance of a written notice of default to the Trustee, Counsel for the Trustee and Counsel for the Einstein Parties; (iii) any BPI or EMG Tenants (as hereinafter defined) are denied access to Lot 007 and/or the Lot 9684, respectively,

3

by the Trustee or his agents; (iv) a breach of the Standstill Agreement executed contemporaneously herewith which is not timely cured within ten (10) days of issuance of a written notice of default as provided above; and (v) any other material breach of this Agreement which is not timely cured within ten (10) days of written notice of default as provided above. (All of (i), (ii), (iii), (iv) and (v) hereinafter referred to as "Termination Events" and individually, as a "Termination Event.") Unless otherwise expressly stated, each provision of this Agreement is subject to immediate termination upon the occurrence of a Termination Event.

4. **Letters**. The parties acknowledge that prior to execution of this Agreement, the Trustee executed a letter dated January 12, 2017, that was disseminated to BPI and/or EMG Tenants giving the Trustee's assurance that they would not be deprived of access, ingress, egress, and regress to W. Patapsco Avenue to and from Lots 007 and/or 9684. JACE executed a letter dated January 17, 2017 advising tenants of Lots 1, 4A, 6, and 6824 that the assignment of rents notice was deferred and that rents are paid to the Suddreth Parties that the Trustee is authorized to disseminate to such tenants. So long as this Agreement is enforceable and not terminated, the Parties shall not revoke either Letter.

5. **Reservation of Rights**. The Parties agree that during the Term and each extension thereof, all rights, claims, remedies and defenses of each of the Parties are reserved until the termination or expiration of the Term and that nothing contained in this Agreement shall constitute an admission against a respective parties' interest or be admissible into evidence in any proceeding in any court, other than to enforce the terms of this Agreement itself.

6. **Obligations of the Parties**.

    A. **Rent Rolls**. Prior to entry into this Agreement, the Parties have identified all current tenants of BPI on Lot 007 and of EMG on Lot 9684 (the "BPI/EMG Tenants"), on the one hand, and the tenants of Lots 1, 4A, 6, and 6824 that are still owned by the Suddreth Parties (the "WPIP Tenants"), and will periodically provide updated information to the other Party upon request.

    B. **Collection of BPI/EMG Tenants' Rents**. If rent payments from BPI or EMG Tenants are received by the Trustee's bookkeeper, the Trustee's staff will direct those BPI/EMG Tenants to pay rents to the Einstein Parties in accordance with Einstein's directions and will not knowingly accept, collect, or deposit rent payments from BPI/EMG Tenants. The Trustee will provide the names of the BPI/EMG Tenants to security so that the security personnel knows who the tenants are, and to his bookkeeper, so that she can identify any rent checks from BPI/EMG Tenants received in the mail or that someone brings in person to the office so that they are not deposited into an estate account. Upon discovery of any inadvertent receipt of any rent payments from any BPI or EMG Tenants by the Trustee, the rent payments will be promptly remitted to the Einstein Parties.

    C. **Collection of WPIP Tenants' Rents**. If rent payments from any WPIP Tenants are received by any of the Einstein Parties, or any inquiries made to any Einstein Party regarding payment of rents, Einstein and the Einstein Parties will direct any such WPIP Tenants to pay rents to the Trustee's book keeper at the office and will not knowingly accept, collect, or

deposit rent payments from WPIP Tenants. The Trustee is entitled to collect and deposit the WPIP Tenants' rents into the "DIP Account" (or another account that the Trustee opens to obtain exclusive control over the Estate's funds). The Trustee will provide the names of the WPIP Tenants to Einstein so that his staff knows who the WPIP Tenants are, so that no WPIP Tenants' rents will be knowingly accepted, collected, or deposited by any of the Einstein Parties. Upon discovery of any inadvertent receipt of any rent payments from any WPIP Tenants by any of the Einstein Parties, the rent payments will be promptly remitted to the Einstein Parties.

D. **Payments and Credits.**

1. <u>Monthly Payments on the JACE Loan</u>. Promptly upon execution of this Agreement, and on the fifteenth (15th) day of each following month, beginning on April 15, 2017, WPIP shall pay Jace Note the sum of Twelve Thousand Dollars ($ 12,000.00) on account of the JACE Loan, which shall be applied to reduce the balance owed under the JACE Loan in accordance with the JACE Loan documents.

2. <u>Credits Reducing the JACE Loan</u>. JACE Note agrees to reduce the balance due under the JACE Loan as follows, with all such credits to be applied in accordance with the terms of the JACE Loan documents:

   a. Effective March 1, 2017, a credit will be applied to reduce the JACE Note in the amount of $2,750.00 for the costs of security and electricity paid for by WPIP for the entire Facility.

   b. For rents collected by JACE Note after November 7, 2016 and prior to this Agreement, the amounts due for the JACE Loan will be reduced by $16,751.00 (which takes into account rent incorrectly collected by WPIP during this period from EMG tenants).

3. <u>Escrow for Real Property Taxes and Water Bills</u>. WPIP agrees to make payments into an escrow account so that WPIP will be able to pay, and shall pay, bills for real property taxes and water charges when due without penalty.

4. <u>Without Prejudice</u>. Nothing herein constitutes an acknowledgement by the Suddreth Parties of the validity of the JACE Note and lien, subject to the terms set forth in this Agreement.

E. **Operational Matters.** Einstein and the Trustee will continue to discuss informally and directly all matters relating to the management of the Facility. The Trustee, Einstein and/or Glen Jensen ("Jensen"), an agent of one or more Einstein Parties, shall, from time to time, tour the Facility in order to more efficiently operate the Facility, inspect for any improper storage or use of the Facility by any of the tenants, illegal dumping, and other matters that relate to the preservation and maintenance of the Facility. In addition, Jensen and Einstein shall be allowed access to the Facility at all times, provided that he is not authorized to discuss business matters with any of the WPIP tenants without the Trustee's permission or request.

F. **Removal of Tenants**. Any existing BPI/EMG Tenants that Einstein desires to have removed from BPI and EMG properties will be referred to the Trustee's staff in the office so that the Trustee may determine if they can lease space from the Estate. The Trustee will be informed if removal of the tenant is to make room for Coparts operations or for failure to pay rent or other default on the lease.

G. **Reporting**.
(i) The Trustee and WPIP will provide the Einstein Parties, on a monthly basis with a monthly profit and loss statement and list of expenses incurred by WPIP in the prior month, which may be included in the Trustee's monthly operating reports filed with the Bankruptcy Court.
(ii) The Einstein Parties will provide the Trustee with all of the data maintained on Quick Books constituting the books and records of WPIP in connection with the Facility, and, to the extent in their possession, copies of all bank statements and copies of all checks for all EMG accounts into which rents and other income from the Facility were deposited.

H. **Standstill Agreement**. The Parties will enter into a Standstill Agreement so that the Pending Litigation shall be stayed during the Term of the Agreement and any extensions thereof, including all enforcement actions, any sheriff's sales and foreclosure actions. During the Term of the Agreement and any extensions thereof, the Parties will not institute new litigation against each other without reasonable prior notice in order to facilitate cooperation. The Trustee is investigating the transactions and occurrences in connection with the Facility, including the transfers of Lots 007 and 9684 and the use or disposition of rents and income generated at the Facility, and the investigation may include additional requests for documents and information from the Einstein Parties, and may include Motions for Rule 2004 Examinations and Production of Documents ("Rule 2004 Motions") of some or all of the Einstein Parties. In the event that any Rule 2004 Motions are filed by the Trustee as to any members of the Einstein Parties, all members reserve all rights in connection with any such Rule 2004 Motions.

I. **Trailers on Lots 9684 and 007**. Einstein may elect to have a trailer office installed on Lots 9684 and/or 007 where his agent(s) will conduct the business of managing Lots 9684 and 007, and the Trustee agrees that the agent will have access to Lots 9684 and 007, but the Trustee does not consent to any agent of the Einstein Parties accessing WPIP's space or working in the same office as a WPIP agent or interfering with WPIP's operations on Lot 1. The purpose of the access of Einstein Party's agents to Lots 9684 and 007 to collect rents for such Lots and/or communicate with BPI or EMG tenants or otherwise manage such Lots 9684 and 007. If access is requested for towing nonpaying tenants, the Trustee will be informed in advance by email communication. The Trustee anticipates that this is a temporary measure, and that eventually, security at the gate will be directed to allow Einstein to access the BPI/EMG parcels without requiring specific permission. The parties will agree upon an emergency measures procedures, especially in the case of snow removal, in which case the parties will work in the most cooperative manner possible.

6

7. **Motion to Approve Agreement**.  The Trustee will promptly file in the Bankruptcy Case a motion to approve this Agreement pursuant to 11 U.S.C. § 363 and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Rule 9019 Motion").  If the Bankruptcy Court does not grant the Rule 9019 Motion, the Parties agree to use their reasonable and diligent efforts to cure the reasons given by the Bankruptcy Court, and renew the Rule 9019 Motion.  If the Bankruptcy Court denies the Rule 9019 Motion and the Parties are unable or unwilling to renew the Rule 9019 Motion, then this Agreement shall be of no force and effect and shall not be construed as an admission against the interests of the Parties; provided, however, that all payments made by WPIP and credits accepted by JACE Note under this Agreement shall remain final and binding on the Parties.

8. **Binding Effect**. Subject to the entry of an Order granting the Rule 9019 Motion, this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

9. **Entire Agreement**. This Agreement constitutes the entire agreement of the Parties as to the subject matter hereof.  The Parties acknowledge that there are no other communications or understandings which in any way restrict or alter the terms of this Agreement.

10. **Authority to Sign Agreement**.  Each corporate entity has executed this Agreement by duly authorized directors or officers with the authority to execute and deliver this Agreement on behalf of its principal, intending that such principal is to be bound by the terms of this Agreement.

11. **Counterparts**. This Agreement may be executed in one or more counterparts, each counterpart to be considered an original portion of this Agreement.  Original signatures transmitted by facsimile or electronic mail will be effective to create such counterparts.

12. **Governing Law.** The Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland.

13. **Integration**. This Agreement constitutes the entire understanding of the parties with respect to the subject matter herein.  All prior or contemporaneous agreements, whether oral or written, are deemed merged herein.

14. **Construction**. This Agreement is the product of negotiation among the parties and their counsel.  For this reason, this Agreement shall not be construed against any party by virtue of such Party being the last entity to create a draft of this Agreement.

**IN WITNESS WHEREOF**, the Parties, each by persons duly authorized, have caused this Agreement to be executed as of the day and year first written above.

_____ March __, 2017
Joseph J. Bellinger, Chapter 11 Trustee   Date
for the Bankruptcy Estate of Manus Edward
Suddreth

_____ March 2017
Mark Einstein, Individually   Date


**B.P.I. Patapsco, LLC**

_____ March 2017
Mark Einstein, President   Date


**EMG Properties, LLC**

_____ March 2017
Mark Einstein, Member   Date


**Albion MMC, LLC**

_____ March 2017
Mark Einstein, Member   Date


**JACE Note, LLC**

_____ March 2017
Mark Einstein, Member   Date

4823-7411-0021, v. 1